In re Fannie Irene PAGITT.

Jim Bob PAGITT, Plaintiff,

v.

Fannie Irene PAGITT, Defendant.

Bankruptcy No. 480–00029.
Ad. No. 480–0007.

United States Bankruptcy Court,
W. D. Louisiana,
Lafayette—Opelousas Division.

April 17, 1980.

William A. Fogleman, Anderson, Leithead, Scott, Boudreau & Savoy, Lake Charles, La., for plaintiff-creditor.

Lawrence O. Guillory, Lafayette, La., for defendant-debtor.

S. S. Holland, Jr., P.O. Box 1108, Lake Charles, La., Trustee in Bankruptcy.

## STATEMENT OF THE CASE

RODNEY BERNARD, Jr., Bankruptcy Judge.

The Plaintiff, Jim Bob Pagitt, filed a complaint for Relief from Automatic Stay against his wife, Fannie Irene Pagitt, the debtor in this Chapter 13 proceeding. On the filing of her petition in the bankruptcy court, the matter styled "In the Matter of the Marriage of Jim Bob Pagitt and Fannie Irene Pagitt", then on appeal in the Court of Civil Appeals for the Twelfth Supreme Judicial District of the State of Texas, was automatically stayed pursuant to 11 U.S.C. 362(a). The plaintiff seeks relief from the stay in order that the appeal may go forward and a final judgment be reached as to the divorce between the parties, and a settlement of the community property. Trial on the Complaint was held on March 11, 1980, at Opelousas, Louisiana.

Upon consideration of the pleadings, evidence, and argument of counsel, the Court makes the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such and to the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

## FINDINGS OF FACT

1.

Mr. Pagitt filed his original petition for divorce in the 3rd Judicial District of Henderson County at Athens, Texas, on July 31, 1978. Trial was had and on April 9, 1979, the Texas court granted a divorce to Mr. Pagitt, divided the community property, and determined the custody arrangement. Mrs. Pagitt then appealed the decision on many points of error, one being the question of the jurisdiction of the court. That action has now been stayed.

2.

Mrs. Pagitt filed suit for divorce in Louisiana on September 18, 1978. Pending litigation, the Louisiana 15th Judicial District Court granted Mrs. Pagitt temporary alimony, custody of the child, and child support, as well as issuing other orders against Mr.

Pagitt. Mr. Pagitt appealed the order and denied the court's jurisdiction over his person. On November 12, 1979, the Third Circuit Court of Appeal of Louisiana upheld all matters on appeal. Further proceedings on the issues of divorce, child custody, and division of property are now stayed.

3.

During the pendency of the divorce proceedings, Mrs. Pagitt caused Mr. Pagitt to be arrested on three occasions on the charges of kidnapping the child from Lafayette, Louisiana, and taking him to Texas. There are also contempt orders against each one of the spouses in Texas and Louisiana.

4.

Mrs. Pagitt filed her voluntary petition under Chapter 13 on January 23, 1980. At the hearing on the present Complaint, Mrs. Pagitt testified that she makes about $400 a month babysitting, and at the present time has no other means of support.

5.

The debtor and her spouse have placed different valuations on items of property belonging to the community existing between them. For example, an affidavit was filed into the Texas court by Mr. Pagitt showing 428 acres of farm land in Texas valued at $112,000.00. The debtor valued this land in her schedules at $350,000.00.

6.

The spouses' inventory of their property has also differed. Mrs. Pagitt testified that Mr. Pagitt owned a duffle bag of coins and jewelry which were omitted from the Texas division of property. Mr. Pagitt claimed the coin collection consisted only of "a few nickels and pennies, and maybe a few quarters" valued at only about three hundred dollars.

## CONCLUSIONS OF LAW

The bankruptcy court has exclusive jurisdiction of all of the property of the debtor's estate, wherever located, as of the commencement of a case under U.S.C. title 11. See 28 U.S.C. 1471, as amended by Section 241(a) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598. To protect this exclusive jurisdiction, the Bankruptcy Code, Section 362(a), provides that a voluntary petition "operates as a stay, applicable to all entities, of—(1) the commencement or continuation . . . of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, . . .; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate; . . . ." The stay is effective upon the date of the filing of the petition.

This automatic stay is extremely broad in scope and applies to almost any type of action against the debtor or the property of the estate. It stops all collection efforts, all harassment, and all interference with the debtor's assets. However, a party in interest may request relief from the stay, in which case the bankruptcy court will consider the impact of the stay on the parties.

Section 362(d) sets forth the basic grounds for relief from the stay as follows:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

The party requesting relief from the automatic stay has the burden of proof only on the issue of the debtor's equity in the property, and the party opposing such relief has the burden of proof on all other issues, 11 U.S.C. 362(g). In the instant case, the issue of the debtor's equity in the property

was not raised, but the evidence is clear that the property in question is community property of which the spouses are co-owners. No evidence was presented as to the necessity of the property for an effective reorganization, but it appears from the debtor's plan, not yet confirmed by this court, that part of the property is to be sold to satisfy some of the creditors as permitted by 11 U.S.C. 1322(b)(8).

Mr. Pagitt argues that the stay should be lifted in order to allow a final judgment as to the divorce and property settlement and to prevent immediate and irreparable injury and damage due to the lack of a determination of ownership of the community property. He further argues that the Texas state proceedings will not cause any interference with this bankruptcy proceeding since the debtor's estate consists only of that property awarded to the debtor by the Texas court.

The legislative history of section 362(d) indicates that cause for relief from the stay might include the lack of any connection with the pending bankruptcy case, citing as an example a divorce or child custody proceeding involving the debtor. See House Report No. 95–595, 95th Cong., 1st Sess. (1977) 343–4; U.S.Code Cong. & Admin. News 1978, p. 5787. However, the report also states that the facts of each request will determine whether relief is appropriate under the circumstances.

Although the state proceedings concerning the divorce of the debtor and the custody of her child appear to have no connection or relation to the debtor's bankruptcy proceeding, the issue of the division of the community property is of vital concern. As stated earlier, this court has exclusive jurisdiction of all the debtor's property as of the commencement of the case. The Texas judgment dividing the property between the debtor and her spouse was not final and therefore was of no effect when the debtor filed her petition in this court. The actual extent of the debtor's estate may not be made clear until a proper appraisal has been made and submitted to this court. The ultimate interest of the estate in the com-

munity property will be determined by applicable state law. Therefore, the trustee must have an opportunity to determine the various rights and interests involved in order to proceed with the administration of the case. If the Texas proceedings were allowed to continue, the administration of the case in bankruptcy would be at a virtual standstill pending the final outcome of all possible appeals in the state court system.

There does not at this time appear to be any appraisal of the debtor's property that is thorough and accurate. The debtor admitted that the values she placed on the property listed in her Chapter 13 Statement were figured roughly but that was the best she could do. She was not sure whether her husband owned certain property or not, such as an oil rig and certain mineral rights in real property. There is evidence in the record that the Texas judgment may have been founded on an allegedly inaccurate inventory submitted by Mr. Pagitt. For example, Mr. Pagitt failed to list as an asset a bag of coins and jewelry and possibly other assets. Mrs. Pagitt's attorney in Texas made a special exception to the sworn inventory and appraisement filed with the Texas court on the grounds that Mr. Pagitt had failed to list his separate property as ordered by the court and also that some of the liabilities listed were joint liabilities of Pagitt Well Service. That exception was overruled.

Both spouses have claimed harassment by the other. The debtor argues that the plaintiff will use the continuation of the Texas proceedings to harass her. The plaintiff argues that the bankruptcy proceeding itself is an act of harassment against him. It is evident from the fact that criminal proceedings, contempt orders, and other matters that have been filed during the pendency of the divorce proceedings have precipitated a great deal of animosity between the parties.

Considering the evidence and the state of affairs between the spouses as presented to this court, we find that the debtor has successfully carried the burden of showing that the stay should not be lifted at this

time, but should continue in effect. The debtor will be given her "breathing spell" in order that her case may be administered in an orderly fashion.

There will be judgment in favor of the debtor, dismissing the complaint, costs to be paid by the plaintiff.