Margaret J. CROWLEY,
Petitioner-Respondent,

v.

Charles E. CROWLEY,
Respondent-Appellant.

No. 13734.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 4, 1986.

---

Karenanne Miller, Johnson & Miller, Springfield, for respondent-appellant.

Robert M. Sweere, Springfield, for petitioner-respondent.

HOGAN, Presiding Judge.

This appeal is taken from an order distributing marital property pursuant to the provisions of § 452.330, RSMo Supp. 1984. The dispositive question—raised by motion to dismiss the appeal, but apparent from the record—is whether the trial court had jurisdiction to divide and assign the marital estate even though the petitioner and respondent had filed a joint Chapter 11 petition in the Bankruptcy Court for the Western Division of Missouri, and never attempted to obtain any release or modification of the "automatic stay" provision of the Bankruptcy Act of 1978, as amended, now codified as 11 U.S.C.A. §§ 362(a)(1) and (3) (West Supp.1986). Upon the record presented, we have concluded that the division of marital property is void and must be set aside.

On November 17, 1983, respondent Margaret Crowley, to whom we shall refer as the plaintiff, filed a petition for legal separation in the Circuit Court of Christian County. Thereafter, appellant Charles Crowley, to whom we shall refer as the defendant, filed a responsive pleading. The responsive pleading, for the most part, admitted the averments of the plaintiff's petition, but also pleaded:

"9. Respondent advises that on the 27th day of October, 1983, Respondent and Petitioner filed a Joint Petition under Chapter 11 of the United States Bankruptcy Code, an action for reorganization, designated as Case No. 83–02837–S–11 in the United States Bankruptcy Court for the Western District of Missouri, Southern Division.

10. That pursuant to the United States Bankruptcy Code, upon the filing of said Petition automatic stay was granted by the bankruptcy court as part of an order for relief under said chapter whereby all actions to obtain possession of property of the bankruptcy estate are stayed. (11 USC, Section 362.) Accordingly, no action to divide any of the property of the parties, marital or non-marital may be taken until such time as the automatic stay under Section 362 is lifted by the bankruptcy court, since the marital and non-marital property of the Petitioner and Respondent are a part of the bankruptcy estate."

The defendant joined this responsive pleading with a petition for dissolution, averring in paragraph 5:

"Respondent states that there is marital property and marital debts to be divided. That they are to be divided upon the occurrence of the lifting of the automatic stay as alleged in Respondent's Answer...."

By reply to the counterpetition, the plaintiff admitted the existence of the pendency of a joint Chapter 11 proceeding in bankruptcy, but denied that such action prevented the apportionment and distribution of

the marital property. We may note, parenthetically, that the evidence demonstrated and the trial court found that the marriage was irretrievably broken, and the trial court entered a decree of dissolution. Inasmuch as both parties averred that the marriage was irretrievably broken, the trial court was authorized to enter a decree of dissolution rather than the decree of legal separation requested by the plaintiff. *O'Neal v. O'Neal*, 673 S.W.2d 126, 127[1] (Mo.App.1984). That part of the decree dissolving the marriage became final long ago and is not in question on this appeal.

By way of general background, it may be said that the parties were married on September 14, 1958, and were finally separated on October 8, 1983. They became the parents of three children, a female born February 21, 1960; a male child born December 18, 1961, and a second female born January 27, 1969.

Both parties are well-educated, and in good health. At the time of trial, plaintiff was 43 years of age and the defendant was 47 years old. At the time of their separation, they had built up a large dairy farm operation. They owned nearly 800 acres of land, 132 head of cattle and a great deal of farming and dairy equipment. It is inferable from the record that the plaintiff assisted, at various times, in the management of the parties' business operation. The plaintiff's evidence, on trial, was that the defendant was guilty of repeated marital infidelity and the defendant admitted as much. There was ample evidence to demonstrate that the marriage was irretrievably broken because the defendant had committed adultery and plaintiff found it intolerable to live with the defendant. Section 452.320.2(1)(a), RSMo 1978.

At the commencement of the trial, several amendments to the pleadings were allowed; specifically the plaintiff was permitted to amend her petition to request maintenance and attorney's fees. It was also agreed that the parties' two elder children were emancipated, and that the youngest child was 15 years of age. Counsel for plaintiff then announced to the trial court:

"MR. SWEERE: Your Honor, the parties are in bankruptcy, and it's our contention at the present time, there's a negative net worth. The assets have substantial value, but they are secured and there are a number of secured— there are a number of debts against them, which results in a negative net figure from our point of view.

\*  \*  \*  \*  \*  \*

THE COURT: Well, that aspect of the case is novel to me as an associate. As you all probably know, I don't try a lot of divorce cases anyway, and I haven't run into exactly this situation, so I'm going to have to give some thought to the issues that you raise with the pending bankruptcy.

MS. MILLER: Your Honor, if I might add, I was contemplating suggesting that perhaps we could brief what we see as the bankruptcy implications on the respective plans that we are submitting. I'm not a bankruptcy lawyer, but I can do some research, and if that would give some guidance to the Court, perhaps, I would be more than happy to do that. If the Court would rather not have that information, that's fine, too.

MR. SWEERE: I think the matter—I think the bankruptcy aspects of the case, if the Court is liberal in allowing what effectively amounts to hearsay testimony, in terms of advice from their bankruptcy counsel, as to procedures and that stuff, a lot of that can come out in the testimony.

THE COURT: Well, I appreciate both of your suggestions, and probably will invite or insist on some further suggestions.

*I don't want myself or us to be here in a futile position of trying to solve or resolve something that the federal courts are going to set aside or be dealing with in a different way than we could here.*

*And so, I would need to know, frankly, the jurisdictional question of what I would actually have the authority to*

*do, that couldn't be set aside or overridden by the federal courts.*

MR. SWEERE: Judge Pudlowski [sic], to my understanding, at the hearing that we spoke of last week, indicated that if the Court felt the need to do so, it would enter whatever order was necessary to allow this hearing to proceed.

THE COURT: Well, we'll just give it our best shot, I guess. Anything further in the way of preliminary motions, announcements, or arguments, or statements of suggestions?" (Emphasis ours.)

Both parties indicated that they had nothing further. The trial proceeded. The plaintiff indicated that she had been advised by her bankruptcy counsel of the general nature of a Chapter 11 proceeding, and bankruptcy schedules were used in establishing the value of the marital property. At the conclusion of the hearing, the trial court made the following announcement:

"THE COURT: All right. I'm going to take this under advisement for not more than one week. I don't even know—I hesitate to even invite any further suggestions or briefs. I don't think any of us have much—can predict what the bankruptcy court might do somewhere down the road in the federal courts."

The court also indicated it would direct the prevailing party to prepare a judgment. An elaborate judgment dividing the property and assigning the joint debts was prepared on the basis of a memorandum furnished to the parties by the trial court. The order was entered March 5, 1984. Thereafter, the judgment was modified upon what we have concluded was a timely motion for new trial. Defendant thereafter appealed. After the case had been submitted, the plaintiff filed a motion to dismiss the appeal, suggesting that no order this court could enter would affect the plan of reorganization approved by the bankruptcy court on January 27, 1986. The defendant opposed the motion on the ground that it was improper for this court to consider any matters not presented to the trial court.

■ The defendant is correct in stating that when this court considers an appeal on its merits, it is ordinarily limited to the record before it. *Williams v. Clean Coverall Supply Co., Inc.,* 613 S.W.2d 659, 664[10] (Mo.App.1980). That rule is of little consequence here; we have recited parts of the record for the express purpose of showing that the trial court's jurisdiction to divide the marital property was before the court and was considered by it. It is the duty of this court to review the record sua sponte for jurisdiction in the trial court, *Justus v. Webb,* 634 S.W.2d 567, 568[2] (Mo.App.1982), for if the trial court did not have jurisdiction to determine the issues on the merits, our jurisdiction does not extend to a determination of the appeal on its merits. *Hart v. Board of Adjustment of City of Marshall,* 616 S.W.2d 111, 113[1] (Mo.App.1981).

Any general discussion of the impact of the Bankruptcy Reform Act of 1978 upon the law of domestic relations [1] or the effect of the decision of the United States Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which invalidated the 1978 Act in part, is well beyond the scope of this opinion. And, as this case was decided in the trial court before the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984—July 10, 1984—we do not consider that amendatory act applicable to this case. *In re Castlerock Properties,* 781 F.2d 159, 161[1, 2] (9th Cir.1986).[2] We limit our inquiry to the effect of the bankruptcy proceeding upon the dissolution action at hand, noting

1. For which see 5 Fam. Advocate # 3 (ABA, Winter 1983).

2. For a discussion of the jurisdictional and procedural effect of Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L.No. 98–353, 98 Stat. 333, see L. King, Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984, 38 Vand.L.Rev. 675 (1985).

that *before* the action for dissolution was filed in the circuit court, a joint Chapter 11 petition had been filed by the parties and the trial court was so informed.

In our view, the commencement of the bankruptcy proceeding created an estate composed of " ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1979); *In re Murray*, 31 B.R. 499, 501[2, 3] (Bankr.E.D.Pa.1983); *Rogers v. Rogers*, 671 P.2d 160, 163[4] (Utah 1983). Upon the filing of a bankruptcy petition the bankruptcy court has exclusive jurisdiction over the property of the bankruptcy estate. *In re Teel*, 34 B.R. 762, 764[1] (Bankr. 9th Cir.1983); *In re Entz*, 44 B.R. 483, 484[1] (Bankr.Ariz.1984); *In re Porter*, 42 B.R. 61, 64[1, 2] (Bankr.S. D.Tex.1984); *In re Murray*, 31 B.R. at 501[2, 3]. For that matter, we need not look to the Bankruptcy Reform Act of 1978 for the proposition that once a bankruptcy court takes actual or constructive (as by filing) possession of property, it has exclusive jurisdiction to govern the administration and distribution of that property. Such has always been the law. *Murphy v. John Hoffman Co.*, 211 U.S. 562, 569, 29 S.Ct. 154, 156, 53 L.Ed. 327, 330 (1909); *Matter of Isis Foods, Inc.*, 37 B.R. 332, 333[1–4] (Bankr.W.D.Mo.1983).

The filing of a bankruptcy petition brings into play the "automatic stay" of the bankruptcy code. 11 U.S.C.A. § 362 (West 1979); *In re Schock*, 37 B.R. 399, 400 (Bankr.N.D.1984); *In re Pagitt*, 3 B.R. 588, 589 (Bankr.W.D.La.1980). The statute, in pertinent part, reads:

"(a) Except as provided in subsection (b) of this section,[3] a petition filed under section 301, 302, or 303[4] of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ....

(3) any act to obtain possession of property of the estate or of property from the estate...."

11 U.S.C.A. § 362(a)(1) and (3) (West 1979).

In the case at hand, the petition for dissolution was filed *after* the filing of the joint Chapter 11 proceeding. Both parties were, by definition, "debtors" within the meaning of 11 U.S.C.A. § 101(12) and certainly an action to distribute marital property was an act to obtain possession of the property of the [bankruptcy] estate or to obtain possession from that estate. After the appeal had been submitted and it became apparent that the bankruptcy proceeding was filed before the action for dissolution, we called upon the parties to submit proof, if any they had, that the bankruptcy court had annulled or modified the automatic stay as provided by 11 U.S.C.A. § 362(d) (West 1979). We received a great many papers and a good deal of pointless argument, but no document indicating in specific terms that the automatic stay had been lifted. Actions taken in violation of the automatic stay are generally considered void. *In re Albany Partners, Ltd.*, 749 F.2d 670, 675[6, 7] (11th Cir.1984); *In re LaTempa*, 58 B.R. 538, 540[1, 2] (Bankr.W. D.Va.1986); *Amonte v. Amonte*, 17 Mass. App.Ct. 621, 461 N.E.2d 826, 829[2–5] (1984).

We decline to dismiss the appeal outright, however, as counsel for the plaintiff cheerfully suggests. We must consider the judgment final if the court exercised all the jurisdiction it *had* to exercise, notwithstanding the many precedents which hold that a judgment in a dissolution case which does not divide the marital assets is not a final judgment. See, e.g., *Schulz v. Schulz*, 612 S.W.2d 380, 382[2] (Mo.App. 1980). Despite the expansive language of the Bankruptcy Reform Act, it has not been believed that the preemptive jurisdic-

---

**3.** Not applicable to the question under consideration.

**4.** The quoted sections refer respectively to voluntary, joint and involuntary proceedings.

tion of the bankruptcy courts extends to such matters as granting a divorce, awarding custody of minor children and providing for the support of the minor children. *In re Schock*, 37 B.R. at 400; *In re Cunningham*, 9 B.R. 70, 71 (Bankr.D.N.M.1981); *Schulze v. Schulze*, 15 B.R. 106, 108–109[1][3] (Bankr.S.D.Ohio 1981). We also have the view that a divorce court may make an award of maintenance to the wife, but the dischargeability—and therefore the enforcement—of such an award is subject to the scrutiny of the bankruptcy court. See: *In re Quinn*, 44 B.R. 622 (Bankr.W.D.Mo.1984); *Matter of Jensen*, 17 B.R. 537 (Bankr.W.D.Mo.1982). We therefore conclude that the decree of dissolution was valid; that the award of child support was valid and that the award of maintenance was valid, subject to the order of the bankruptcy court. To the extent we have jurisdiction, we find no error in making either such award. As we have indicated, the division of marital property was void. The cause is reversed and remanded to the Circuit Court of Christian County with directions to set aside its original decree and enter judgment as of the date of the original judgment in accordance with this opinion.

MAUS, J., disqualified.

PREWITT, C.J., concurs.

CROW, J., concurs specially.

CROW, Judge, concurring.

The principal opinion, as I understand it, approves all of the components of the decree of dissolution of marriage except those which divide the marital property. Those provisions, according to my understanding, are reversed because the Chapter 11 proceeding in the Bankruptcy Court automatically stayed the trial court from exercising its jurisdiction under § 452.330, Laws 1981, pp. 615–16, to divide the marital property.

Assuming that is the import of the principal opinion, I concur. I believe, however, that it would be helpful if we suggested how the trial court should proceed once the stay is lifted. At that point, it seems to me, the trial court should hold another hearing, if necessary, in order to identify the marital property that exists for division. Exactly how the Chapter 11 proceeding will affect the marital estate may not be known until that proceeding is concluded. It would be futile to undertake a division of marital property until the trial court is certain what property there is to divide.

Once the marital property is divided by the trial court, any party deeming himself aggrieved thereby should be allowed to appeal, but only from the division of the property. All other issues between the parties, as I understand the principal opinion, stand adjudicated by the existing decree.

In saying this, I do not overlook those cases holding that where a decree of dissolution of marriage fails to dispose of all the marital property and separate property, the judgment is not final and the appellate court acquires no jurisdiction of the appeal. See for example, *Frame v. Frame*, 696 S.W.2d 332, 334[1] (Mo.App.1985).

Here, however, the trial court did undertake to dispose of all the property, albeit we have held, correctly I believe, that the Chapter 11 proceeding stayed the trial court from doing so. In these circumstances, I see no virtue in deferring appellate review of the other provisions of the existing decree until such time as the trial court divides the marital property. Finding no error in any of those provisions, I agree that they be upheld.