Michael P. PHELAN; Michael Phelan, Trustee of the Michael P. Phelan Revocable Living Trust dated May 14, 2004; and Seamless Investments, LLC, Plaintiffs/Appellants,

v.

Ernest W. ROSENER, Jr.; Summit Springs at Wild Horse I, LLC; and Summit Springs at Wild Horse II, LLC, Defendants/Respondents.

No. ED 104677

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: February 28, 2017

Thomas J. O'Toole, Jr., Sarah Wright Rubenstein, Conor P. Neusel, St. Louis, MO, for Plaintiffs/Appellants.

Dean C. Nichols, James D. Ribaudo, St. Louis, MO, for Defendants/Respondents.

SHERRI B. SULLIVAN, P.J.

### Introduction

Michael P. Phelan; Michael Phelan, Trustee of the Michael P. Phelan Revocable Living Trust Dated May 14, 2004; and Seamless Investments, LLC (collectively Appellants) appeal from the trial court's summary judgment against them on their

claims for declaratory judgment and to quiet title and in favor of Ernest W. Rosener, Jr.; Summit Springs at Wild Horse I, LLC; and Summit Springs at Wild Horse II, LLC (collectively Respondents) on Respondents' counterclaims for declaratory judgment and to quiet title. We affirm.

## Factual and Procedural Background

Appellant Michael Phelan is trustee of the Michael P. Phelan Revocable Living Trust and is the sole member and owner of Seamless Investments, LLC. Appellants are the owners of real property located at 18823 Cliffview Lane, 18833 Cliffview Lane, 18841 Cliffview Lane, and 170 Centaur Road in Wildwood, Missouri. Respondent Ernest W. Rosener, Jr. is the owner of Respondents Summit Springs at Wild Horse I, LLC and Summit Springs at Wild Horse II, LLC. Respondents are the owners of real property located at 18913 and 18971 Wild Horse Creek Road in Wildwood, Missouri. Appellants' and Respondents' properties abut a private roadway known as Cliffview Lane.

Prior to July 2, 1982, the properties in question were owned by John C. McPheeters and Constance B. McPheeters

(McPheeters), with the exception of 18913 Wild Horse Creek Road.

On July 2, 1982, the McPheeters, as Grantors, and the McPheeters and an individual named Hugh M. Cannon, as Trustees, created the Road Maintenance Agreement (RMA) wherein it declared:

> Whereas, there is a private roadway easement over the land described in Exhibit B, which provides ingress and egress to the property described in Exhibit A, and

> Whereas, Grantor contemplates the sale of tracts of land comprising the property described in Exhibit A, and by this Agreement intends to provide for the present and future maintenance of the roadway for the benefit of the present and future owners of the tracts to be sold and the future owners of any part or portion of such tracts;

> Now Therefore, in consideration of the premises, the covenants, contained herein, and the mutual benefit to be derived by the parties, the Grantors, for themselves, their successors, heirs and assigns, and for and on behalf of all persons who may hereafter own all or any part of the land described in Exhibit A, agree with the Trustees as follows...

The RMA provides for the appointment of trustees and the collection of assessments. The RMA further provides:

1. In addition to the metes and bounds description, this tract is described as part of lots 6 and 7 of the Henry Tyler Estate subdivision and part of lot 6 of the subdivision of Spencer Tyler Estate.

2. In addition to the metes and bounds description, this tract is also described as part of lot 6 of the Spencer Tyler Estate subdivision.

3. The easement states, prior to setting forth the metes and bounds description, it is a private road easement for ingress, egress, and public utilities in part of lots 6 and 7 of the Henry Tyler estate and part of lot 6 of the Spencer Tyler estate.

This Agreement shall be binding on the Grantors, the named Trustees, the present and future tract owners, their heirs, successors, assigns and personal representatives, and the covenants and agreements contained herein shall run with the land described herein. It is further intended this Agreement shall run with the land described and be binding however such land shall be divided and subdivided, whether into greater or fewer tracts than herein contemplated, provided however that no tract which does not now or in the future have access to the roadway shall be neither benefitted nor burdened by this Agreement.

Exhibit A sets forth a metes and bounds legal description of two tracts of land: 37.32 acres which included what would eventually become 18833 Cliffview Lane and 18841 Cliffview Lane;[1] and 30.906 acres which would become 170 Centaur Road and 18971 Wild Horse Creek Road.[2] Exhibit B provides a metes and bounds legal description of the entirety of Cliffview Lane, beginning at Wild Horse Creek Road on the east and ending in a circle with a 50-foot radius on the west end.[3] The road easement extends over 18833 Cliffview, 18841 Cliffview, and onto 170 Centaur Road and 18971 Wild Horse Creek Road.[4] The RMA was recorded with the

4. Notably, while the McPheeters never owned 18913 Wild Horse Creek Road, now owned by Respondents, the Cliffview Lane easement as described in Exhibit B extends over that property and 18823 Cliffview Lane, which had been owned by the McPheeters. However, the Ernests, who owned a portion of the land at issue and were the McPheeters' predecessor in title to 18823 and 18833 Cliffview, split 18913 Wild Horse Creek off from the other parcels and created a roadway and public utility easement extending over 18913 Wild Horse Creek for the benefit of that property. This easement is the easternmost portion of Cliffview Lane which connects with Wild

St. Louis County Recorder of Deeds on July 7, 1982.

On July 2, 1982, the same day the RMA was created, the McPheeters conveyed a portion of their land, 18841 Cliffview, to Appellants' predecessor in title. The conveyance included an easement for ingress and egress over the entirety of the Cliffview Lane easement identical to that in the RMA.

On May 2, 1983, the McPheeters conveyed 18823 and 18833 Cliffview to Appellants' predecessor in title, which included an easement over the entirety of Cliffview Lane and was taken "[s]ubject to building lines, easements, conditions and restrictions of record[.]"

On January 4, 1984, the McPheeters conveyed 170 Centaur to Appellants' predecessor in title and 18971 Wild Horse Creek to Respondents' predecessor in title. An express easement over Cliffview Lane was not included in the deeds.

Appellants acquired 18833 Cliffview in April 2007, and 18841 Cliffview and 170 Centaur in May 2014. The deeds for 18833 and 18841 Cliffview include an express easement over Cliffview Lane. Respondents acquired 18913 and 18971 Wild Horse Creek in August 2007.

In January 2015, Appellants filed an Amended Petition seeking a declaratory judgment (Count I), quiet title (Count II), damages for trespass (Count III), and injunctive relief (Count IV) against Respondents alleging neither 18913 nor 18971 Wild Horse Creek had any right to use the Cliffview Lane easement.

Respondents filed an Amended Counterclaim seeking declaratory relief and to quiet title to the Cliffview Lane easement with regard to 18913 Wild Horse Creek (Counts I and II) and to 18971 Wild Horse Creek (Counts III and IV), a prescriptive easement (Count V), and for damages (Count VI).

The parties filed cross-motions for partial summary judgment. After the trial court initially denied the motions based upon a finding there were disputed issues of material fact, the parties filed a Joint Motion for Reconsideration. In the Joint Motion, the parties agreed the RMA was signed by the parties' predecessors in title; was recorded with the St. Louis County Recorder of Deeds on July 2, 1982; provided a metes and bounds description of an easement over Cliffview Lane; and provided a metes and bounds description of multiple properties including 18971 Wild Horse Creek. The parties agreed "that the interpretation of the legal significance of the [RMA] is a matter that should be decided by this [c]ourt as a matter of law" and moved the court to make a legal finding as to whether the RMA granted an easement over Cliffview Lane for the benefit of the property located at 18971 Wild Horse Creek. Upon the parties' Joint Motion, the court concluded the RMA was created with the intent to provide for the present and future maintenance of Cliffview Lane by the present and future owners of the tracts and that it granted 18971 Wild Horse Creek an easement over Cliffview Lane. The court entered judgment in favor of Respondents on Counts III and IV of their Amended Counterclaim and against Appellants on Counts I and II of their Amended Petition. The remaining claims between the parties were subsequently resolved with judgment being entered in favor of Respondents on Counts I and II of their Amended Counterclaim re-

Horse Creek Road. On appeal, the parties do not dispute that 18913 Wild Horse Creek has an express easement as to a portion of Cliff-

view Lane, as such easement is contained in the deed.

garding 18913 Wild Horse Creek Road, while Count III of Appellants' Amended Petition and Counts V and VI of Respondents' Amended Counterclaim were dismissed. This appeal follows.

## Points on Appeal

In their first point on appeal, Appellants argue the trial court erred in denying their motion for partial summary judgment and in granting Respondents' motion for partial summary judgment because the undisputed material facts demonstrate Appellants have a valid easement over Cliffview Lane and Respondents do not, in that Appellants' deed grants them an express easement to use Cliffview Lane; the RMA could not have created an easement as a matter of law because a property owner cannot grant itself an easement on his own land; the RMA did not create an easement as a matter of law because the agreement contains no words of grant or conveyance; and even if they had attempted to do so, the McPheeters could not have lawfully granted 18971 Wild Horse Creek an easement over Cliffview Lane, as the McPheeters no longer owned the land on which the lane sits at the time they transferred 18971 Wild Horse Creek to Respondents' predecessor in title.

In their second point on appeal, Appellants argue the trial court erred in granting Respondents' motion for partial summary judgment because the terms of the RMA are ambiguous and there is a genuine issue of material fact as to whether the RMA expressly grants an easement over Cliffview Lane to Respondents, in that the agreement contains no words of creation, grant, or dedication of an easement; provides only for the maintenance of the lane; and fails to define the term "access."

**5.** All Rule references are to Mo. R. Civ. P.

## Standard of Review

Appellate review of the grant of summary judgment is *de novo*. ITT Comm. Fin. Corp. v. Mid–Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717 (Mo. App. E.D. 2010). We will affirm the trial court's judgment if it is sustainable on any theory. Citibrook II, L.L.C. v. Morgan's Foods of Missouri, Inc., 239 S.W.3d 631, 634 (Mo. App. E.D. 2007). "Because our review is *de novo*, the trial court's order may be affirmed in this Court on an entirely different basis than that posited at trial." ITT Comm. Fin. Corp., 854 S.W.2d at 387–88.

We will uphold summary judgment on appeal only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ITT Comm. Fin. Corp., 854 S.W.2d at 376; Rule 74.04(c).[5] The record is viewed in the light most favorable to the party against whom judgment was entered and that party is entitled to the benefit of all reasonable inferences from the record. Lewis v. Biegel, 204 S.W.3d 354, 356 (Mo. App. W.D. 2006). "Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." Premier Golf Missouri, LLC v. Staley Land Co., LLC, 282 S.W.3d 866, 871 (Mo. App. W.D. 2009).

## Discussion

In their first point, Appellants argue the trial court erred in entering summary judgment in favor of Respondents based on a finding the RMA created an easement.

2016.

### The RMA Created an Easement

With regard to the RMA, Appellants present several arguments. First, Appellants contend the RMA contains no words of grant or conveyance. Next, Appellants argue the McPheeters could not have created an easement via the RMA in 1982 because they could not grant themselves an easement on their own land nor when they conveyed the land to Appellants' predecessor in title in 1984 because they no longer owned the land on which Cliffview Lane sits. We disagree with each of these positions.

While easements are normally created by grant or prescription, they may be acquired by agreement. Rosenbloom v. Grossman, 351 S.W.2d 735, 738 (Mo. 1961). " '[N]o particular form and language are necessary to create an easement; rather, any words clearly showing the intention of the parties to create a servitude on a sufficiently identifiable estate is sufficient.' " Blackburn v. Habitat Dev. Co., 57 S.W.3d 378, 385 (Mo. App. S.D. 2001), quoting Hynes v. City of Lakeland, 451 So.2d 505, 511 (Fla. App. 2 Dist. 1984).

Generally, there are two types of easements, appurtenant and in gross. An easement appurtenant runs with the dominant tenement and passes with the conveyance of the dominant tenement even if not specifically mentioned in the instrument of conveyance. Three–O–Three Investments, Inc. v. Moffitt, 622 S.W.2d 736, 739 (Mo. App. W.D. 1981). "Two of the principal legal attributes of an easement appurtenant for right of way purposes are the existence of both a dominant and servient tenement and that one terminus of the right of way 'must lie on the land to which it is claimed to be appurtenant.' " Id., quoting Downey v. Sklebar, 261 S.W. 697, 698 (Mo.App.1924). Words such as heirs, assigns, perpetual, and permanent indicate a desire to create an easement appurtenant but are not necessary in order to do so. Three–O–Three Investments, Inc., 622 S.W.2d at 739.

An easement in gross has no dominant tenement but instead benefits a specified person. Three–O–Three Investments, Inc., 622 S.W.2d at 739; Engelhardt v. Gravens, 281 S.W. 715, 718 (Mo. 1926). "The existence of a dominant tenement resolves any doubt as to whether an easement appurtenant or an easement in gross was intended, as an easement in gross has no dominant tenement." Three–O–Three Investments, Inc., 622 S.W.2d at 739. "An easement will never be presumed to be a mere personal right, when it can fairly be construed to be appurtenant to some other estate." Engelhardt, 281 S.W. at 718. (citation omitted).

The RMA contains language clearly showing an intent to create a servitude on the subject lands. The RMA provides "there is a private roadway easement over the land described in Exhibit B, which provides ingress and egress to the property described in Exhibit A" and was drafted in contemplation of the future sale of tracts of land in Exhibit A. Exhibit A comprised a metes and bounds description of two tracts of land encompassing 18833 Cliffview, 18841 Cliffview, 170 Centaur, and 18971 Wild Horse Creek. Exhibit B was a metes and bounds description of the entirety of Cliffview Lane, extending over those same properties. The RMA bound the McPheeters as grantors and "the present and future tract owners, their heirs, successors, assigns and personal representatives[.]" The RMA specifically stated the agreement was intended to run with the land described and bind the land no matter how it was divided or subdivided in the future, "provided however that no tract which does not now or in the future have access to the roadway shall be neither

benefitted nor burdened by this Agreement." The fact that the RMA also includes provisions regarding the maintenance of the roadway "for the benefit of the present and future owners of the tracts to be sold and the future owners of any part or portion of such tracts" does not prevent the RMA from granting an easement.

## Merger

■ Appellants contend the RMA cannot create an easement because, at the time of its execution, the McPheeters owned all of the subject land and property owners cannot, as a matter of law, have an easement over their own land.

■ In order to create an appurtenant easement there must be a dominant and servient estate and " 'they must not be lodged in the same person.' " Ball v. Gross, 565 S.W.2d 685, 688 (Mo. App. 1978), quoting Marshall v. Callahan, 241 Mo.App. 336, 229 S.W.2d 730, 735 (1950). "[A] man cannot have an easement over his own land." Ball, 565 S.W.2d at 688. "This principle most often comes into play when the two properties affected by an easement, the dominant and servient estates, are merged under common ownership and possession. In such a case, the easement is generally extinguished." Woodling v. Polk, 473 S.W.3d 233, 236 (Mo. App. E.D. 2015).

■ Under the merger doctrine, "one who owns an entire tract or adjoining parcels of land, by distributing or redistributing the burdens of the various portions, creates no easement until a severance of title occurs." Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604, 607 (1934). Once a third party acquires title to some part of the property, thereby severing title, the grant of the easement become effective. Id. (recorded plat granting easement and placing restrictions on the land was not effective until the owner of the land conveyed part of the land). Furthermore, "[t]he intention of the parties is the paramount and controlling question. That intention is to be ascertained from the terms of the deed considered in the light of the circumstances surrounding the parties." Id.

In Engelhardt, 281 S.W. at 718, the owner of a large parcel of land sold two tracts on the southern half of his property to two different buyers.[6] On the same day, the grantor and the buyers entered into a contract wherein the grantor granted the two buyers and their heirs and assigns an ingress and egress easement across his land and the two buyers granted to each other and their heirs and assigns an ingress and egress easement across their respective lands. The contract further permitted the grantor to construct ditches for the drainage of his land along the roadway on the buyers' properties so long as they did not interfere with said roadway. On appeal, the Court rejected the claim of a subsequent third-party purchaser of an adjacent parcel to the south seeking to utilize the roadway easement. In doing so, the Court noted:

> The deeds made by [grantor] to [the buyers], and the contract made by all three on the same day, and affecting the same subject, are to be read together. They related to the same subject; they were executed contemporaneously; they were executed upon a consideration moving all the parties concerned; and the contract explained, and fully consummated the intention of the parties to the deeds, and made all parts of a com-

**6.** This created a tract in the grantor encompassing the entire northern section, another tract in the middle to one of the buyers, and a third tract along the entire southern portion in the other buyer, effectively landlocking the tracts of both buyers.

plete expression. Cook v. Newby, 112 S.W. 272, 213 Mo. 471 [Mo. 1908]. The effect was to create easements inhering in and running with the lands involved, or, as between [the buyers], estates respectively and mutually dominant and servient. Under the paragraph of the contract first above set out, [grantor] granted an easement upon his land, which was appurtenant to the [first tract sold], and to the [second tract sold], and, by the second paragraph, easements, reciprocal in character were granted appurtenant to the [first tract sold] and to the [second tract sold]. These were all private easements, created with and not existing separate and apart from the particular lands to which they were annexed.

Engelhardt, 281 S.W. at 718.

In this case, the McPheeters executed the RMA the same day they sold 18841 Cliffview to Appellants' predecessor in title. Both documents contain an identical description of the Cliffview Lane easement allowing for ingress and egress over the entirety of Cliffview Lane. The 18841 Cliffview deed and the RMA related to the same subject; were executed contemporaneously; and the RMA explained and fully consummated the intention of the parties to the deed and, therefore, the documents must be read together.

In support of their merger argument, Appellants rely on Ball, 565 S.W.2d 685 and Woodling, 473 S.W.3d 233, wherein the courts found the grantor's attempt to create an easement was ineffective due to merger. These cases are readily distinguishable from the case sub judice because the McPheeters' contemporaneous conveyance of 18841 Cliffview to Appellants' predecessor severed the McPheeters' title. The RMA and the McPheeters' conveyance of 18841 Cliffview to a third party

served to create easements inhering in and running with the subject land, creating "estates respectively and mutually dominant and servient." See Engelhardt, 281 S.W. at 718. The property at 18841 Cliffview became a dominant estate with an ingress and egress easement over the Cliffview Lane easement running over 18833 Cliffview, 170 Centaur, and 18971 Wild Horse Creek, all property owned by the McPheeters. At the same time, 18841 Cliffview became a servient estate by conferring an ingress and egress easement across it for the benefit of 18833 Cliffview, 170 Centaur, and 18971 Wild Horse Creek. At that time, the McPheeters could not effectively create an ingress and egress easement for the benefit of the land they still owned, i.e., they could not create an easement across 18833 Cliffview for the benefit of 170 Centaur and 18971 Wild Horse Creek or vice versa because it would be destroyed by merger.

However, the McPheeters subsequently conveyed 18833 Cliffview to Appellants' predecessor in title in May 1983. The deed included the Cliffview Lane easement as set forth in the RMA and the fee simple was granted "[s]ubject to building lines, easements, conditions and restrictions of record[.]" At this time, the McPheeters again severed their title and 18833 Cliffview became a dominant estate with an ingress and egress easement not only over 18841 Cliffview but also over the properties still owned by the McPheeters, 170 Centaur and 18971 Wild Horse Creek. Because 18833 Cliffview was conveyed "subject to . . . easements . . . of record," and the RMA, previously recorded, created an ingress and egress easement over Cliffview Lane for the benefit of 170 Centaur and 18971 Wild Horse Creek, 18833 Cliffview became servient not just to 18841 Cliffview but also to 170 Centaur and 18971 Wild Horse Creek.[7] Such grants and reserva-

---

7. A servient tenement is bound by the terms

of an easement if the owners have notice of

tions pertaining to 18833 Cliffview, 170 Centaur, and 18971 Wild Horse Creek were well within the McPheeters' rights as fee simple owners of the properties.

The fact that the McPheeters' subsequent conveyances of 170 Centaur and 18971 Wild Horse Creek did not include the Cliffview Lane easement is inconsequential because, as dominant estates to the appurtenant Cliffview Lane easement over 18833 Cliffview and 18841 Cliffview, the easement passed by deed with the estates regardless of whether or not the easement was specifically mentioned in the transfer. Three–O–Three Investments, Inc., 622 S.W.2d at 739; Knox County Stone Co. v. Bellefontaine Quarry, Inc., 985 S.W.2d 356, 362 (Mo. App. E.D. 1998).

■ The RMA is clear that it intends to create the Cliffview Lane easement for the present and future benefit of 18833 Cliffview, 18841 Cliffview, 170 Centaur, and 18971 Wild Horse Creek, in that it specifically states the easement is to provide ingress and egress to those properties as they are described in the RMA and they clearly have "access" to the easement extending onto the land. "Access" is defined as "an opportunity or ability to enter, approach, pass to and from, or communicate with[.]" Black's Law Dictionary 14 (9th ed. 2009). Appellants' assertion Respondents do not have "access" to a roadway easement on their own land, a parcel specifically intended to be benefited by the easement, is without merit. Furthermore, the very terms of the easement itself evidence an intent to benefit and burden all four parcels. The Cliffview Lane easement is exceedingly broad if it was only intended to benefit the northernmost parcels, 18833 and 18841 Cliffview; in order to provide ingress and egress for 18841 Cliffview to Wild Horse Creek Road, that parcel would

only need an easement across 18833 Cliffview Lane and there is no logical reason to extend the easement to a cul-de-sac ending on the two southern parcels or, for that matter, to include any language burdening 18841 Cliffview with any easement for the benefit of any other parcel. Similarly, there is no reason to include the Cliffview Lane easement for any of the four parcels subject to this appeal in the deed to 18833 Cliffview as it was completely unnecessary for 18833 Cliffview to access Wild Horse Creek Road. The Cliffview Lane easement as set forth in the RMA and in the deeds to 18833 and 18841 Cliffview clearly intended to both benefit and burden those properties as well as 170 Centaur and 18971 Wild Horse Creek.

Based on the foregoing reasons, Appellants' Point I is denied.

### Whether There Are Genuine Issues of Material Fact

■ In their second point, Appellants argue the trial court erred in granting Respondents' motion for partial summary judgment because the terms of the RMA are ambiguous and there is a genuine issue of material fact as to whether the RMA expressly grants an easement over Cliffview Lane.

Appellants' point is not well taken. The trial court initially denied the parties' motions for partial summary judgment based upon a finding there were disputed issues of material fact. At that time, Appellants filed a Joint Motion for Reconsideration with Respondents wherein they agreed to the essential facts and "that the interpretation of the legal significance of the [RMA] is a matter that should be decided by this [court] as a matter of law" and moved the court to make a legal finding as

---

record, actual notice, or constructive notice. Hall v. Allen, 771 S.W.2d 50, 53 (Mo. 1989).

Recorded easements constitute "notice of record." Id.

to whether the RMA granted an easement over Cliffview Lane for the benefit of the property located at 18971 Wild Horse Creek. Based upon the parties' agreement that there were no disputed issues of material fact, the court did exactly what the parties requested and made a legal determination as to the effect of the RMA.

Generally, a party on appeal "must stand or fall" by the theory on which he tried and submitted his case in the court below. Kleim v. Sansone, 248 S.W.3d 599, 602 (Mo. banc 2008). "It is [ ] well settled that '[p]arties are bound on appeal by the positions they took in the trial court.' " Roche v. Roche, 289 S.W.3d 747, 753 (Mo. App. E.D. 2009), quoting State Farm Mut. Auto. Ins. Co. v. Esswein, 43 S.W.3d 833, 839 (Mo. App. E.D. 2000). Here, the trial court initially granted Appellants the finding they now seek, a denial of summary judgment based on the existence of disputed issues of material fact. After receiving the court's judgment, Appellants argued against the court's finding of such and specifically requested the court to make a legal determination on the effect of the RMA. Appellants are bound by the theory they submitted to the trial court, and their point is not preserved for review. Appellants' Point II is denied.

### Conclusion

The judgment of the trial court is affirmed.

Roy L. Richter, J., and Colleen Dolan, J., concur.