

# In the
# Missouri Court of Appeals
## Western District

TENAMPA, INC., ET AL.,                    )
                                          )
      **Appellant-Respondents,**     )     **WD83226 Consolidated with**
                                          )     **WD83243**
v.                                        )
                                          )     **OPINION FILED: October 13, 2020**
WILLIAM T. BERNARD, ET AL.,               )
                                          )
      **Respondents;**               )
                                          )
WESTPORT ULTRA PROPERTIES,                )
LLC,                                      )
                                          )
      **Respondent-Appellant.**      )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Sandra Midkiff, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Thomas N. Chapman, Judge

Tenampa, Incorporated ("Tenampa") and the Rudolph A Garcia and Margaret A. Garcia Family Trust ("Trust")[1] appeal from the judgment of the Circuit Court of Jackson County finding that Tenampa owns a parking lot located at 1623 Westport Road ("Parking Lot") in fee simple but subject to an easement in gross owned by Westport

---

[1] Rudolph Garcia and Margaret Garcia (collectively "the Garcias") are the trustees of the Trust.

Ultra Properties, LLC ("Ultra") for the daytime use of up to two parking spaces located within the Parking Lot and an easement in gross owned by Michael Gatrost and Julie Gatrost, husband and wife, (collectively "the Gatrosts") for the daytime use of up to two parking spaces located within the Parking Lot. On cross-appeal, Ultra asserts that it owns an easement appurtenant for the daytime use of up to four parking spaces located within the Parking Lot. We affirm in part and amend the circuit court's judgment pursuant to Rule 84.14,[2] to reflect that the Trust owns the Parking Lot in fee simple subject to an easement in gross owned by Ultra for the daytime use of up to two parking spaces located within the Parking Lot and an easement in gross owned by the Gatrosts for the daytime use of up to two parking spaces located within the Parking Lot.[3]

## Factual and Procedural Background[4]

William Bernard ("Bernard") and Michael Gatrost ("Gatrost") purchased real property located at 1711 Westport Road ("Building Lot") which contained a commercial office building ("Building") by a warranty deed executed on May 1, 1986. Bernard and Gatrost were attorneys practicing individually, but the two shared office space within the Building. On August 1, 1986, the Bernards and the Gatrosts purchased the Parking Lot, which is located close to but not adjacent to the Building Lot and has approximately ten

---

[2] All rule references are to Missouri Supreme Court Rules (2020).

[3] During oral argument before this court, counsel for the Trust and Tenampa conceded the ownership was improperly reflected in the Judgment and agreed that the trial court's judgment needed to be amended to properly reflect that the Parking Lot was owned by the Trust rather than Tenampa.

[4] "In the appeal of a bench-tried case, the appellate court views the facts in the light most favorable to the trial court's judgment." *Maly Com. Realty, Inc. v. Maher*, 582 S.W.3d 905, 907 n.1 (Mo. App. W.D. 2019) (quoting *Pearson v. AVO Gen. Servs., LLC*, 520 S.W.3d 496, 500 n.1 (Mo. App. W.D. 2017)).

parking spaces. The Parking Lot consists of two tracts of land, which are legally described as:

Tract I:

All that part of the Northwest 1/4 of Section 30, Township 49, Range 33, described as follows: Beginning at a point on the East line of Genessee Street, 70 feet South of the South line of 43rd Street, which point is 1415 feet West of the East line of the Northwest 1/4 of said Section 30; thence East and parallel with the South line of 43rd Street, 69 feet; thence South 30 feet; thence West and parallel with the South line of 43rd Street, 69 feet to the East line of Genessee Street; thence North 30 feet to the point of beginning, in Kansas City, Jackson County, Missouri, EXCEPT any part in roads.

Tract II:

Part of the Southwest 1/4 of Section 19 and the Northwest 1/4 of Section 30, Township 49, Range 33, described as follows: Beginning in the South line of 43rd Street, as now established in said city, at a point 1415 feet West of the East line of the Southwest 1/4 of Section 19 and running thence South along the East line of Genessee Street 70 feet; thence East and parallel with the South line of 43rd Street, 40 feet; thence North and parallel with the East line of Genessee Street, 70 feet to the South line of 43rd Street; thence West along the street line last mentioned, 40 feet to the point of beginning, in Kansas City, Jackson County, Missouri, EXCEPT any part in roads.

Bernard and Gatrost recorded a warranty deed regarding the purchase of the Parking Lot. They purchased the Parking Lot in part to provide additional parking for their law practices, because they feared the city, at some point, would restrict parking on Westport Road due to increased traffic.

In 1995, the Garcias approached Bernard and Gatrost about leasing the Parking Lot to provide parking for their restaurant, Tenampa, that was directly adjacent to the Parking Lot because the restaurant's liquor license depended upon at least ten parking

3

spaces being available for their customers. The Garcias, the Bernards, and the Gatrosts entered into a lease agreement allowing the Garcias and Tenampa to use the Parking Lot for their customer and employee parking. In 2000, the Garcias approached Bernard and Gatrost seeking to purchase the Parking Lot, and in two separate warranty deeds recorded on August 1, 2000, the Bernards and the Gatrosts each conveyed their fee simple interest in the Parking Lot to the Garcias, but retained an interest in the Parking Lot. The deed provided that:

> GRANTORS AND OR THEIR HEIRS OR ASSIGNS SHALL RETAIN THE RIGHT TO UTILIZE THE PARKING LOT UP TO FOUR (4) SPACES DURING THE DAY, AND THIS WILL BE A CONTINUING RIGHT AND EASEMENT.

Subsequently, the Garcias executed a warranty deed conveying their interest in the Parking Lot to the Trust, "[s]ubject to covenants, conditions, easements, restrictions and reservations of record, if any."

On October 22, 2003, Joseph Robison and Nancy Robison (collectively "the Robisons") purchased the Building Lot from the Bernards and the Gatrosts. The warranty deed memorializing the transaction did not mention the four parking spaces nor any transfer of any easement in any parking spaces. A second warranty deed was recorded on October 22, 2003, conveying the Robisons' fee simple interest in the Building Lot to TBD Properties LLC ("TBD"). Gatrost moved his law practice out of the Building to Lee's Summit, but Bernard continued to work from the Building entering into a lease agreement for a portion of the office space with TBD. During his tenancy,

4

Bernard continued to park in the Parking Lot until his law practice left the Building sometime in 2015.

On November 20, 2013, Ultra entered into a real estate contract with TBD for the purchase of the Building Lot, and the contract was silent as to any easement being conveyed regarding the Parking Lot and contained only the Building Lot's legal description. However, after obtaining a title report, Ultra's counsel became aware of the deed recorded on August 1, 2000, conveying the Parking Lot from the Bernards to the Garcias, but retaining the interest in the four parking spaces. Ultra's counsel was unaware of the deed recorded on the same date conveying Gatrosts interest in the Parking Lot to the Garcias. Ultra's counsel wrote a letter to Bernard stating in relevant part:

> [Ultra] recently discovered that TBD Properties, LLC and Joseph L. Robison did not obtain the transfer of the easement of four parking spaces from you. Now that Westport Ultra is acquiring the property from TBD Properties, LLC, we are needing the assignment of the easement concerning those four parking spaces.

The Bernards executed an easement conveyance on December 24, 2013 transferring their interest in the four parking spaces to Ultra. Ultra proceeded with its purchase and closing on the Building Lot in February 2014, without securing the transfer of easement rights in the four parking spaces from the Gatrosts.

On February 21, 2014, three documents were recorded: (1) a warranty deed transferring TBD's fee simple interest in the Building Lot to Ultra; (2) the easement conveyance executed on December 24, 2013, by the Bernards conveying their interest in easement in the four parking spaces to Ultra providing that "[t]his easement conveyance shall run with the land and shall be binding upon [the Bernards], their heirs, successors,

5

and assigns, and shall inure to the benefit of [Ultra] and its successors and assigns;[5] and (3) a deed of trust in favor of Great American Bank securing the Building Lot and the use of four parking spaces in the Parking Lot as collateral for its loan to Ultra. Great American Bank recorded a second deed of trust on September 30, 2015, securing the Building Lot and the use of four parking spaces in the Parking Lot as collateral for a second loan to Ultra.[6]

On July 20, 2017, Tenampa and the Trust filed a Petition to Quiet Title to the Parking Lot in the circuit court naming as defendants: the Bernards, the Gatrosts, TBD, Ultra, Great American Bank, David Kenner,[7] and MPOWB Trustee Services, LLC,[8] and the unknown heirs, devisees, grantees, assignees, donees, alienees, legatees, administrators, executors, guardians, mortgagees, trustees, and legal representatives and all other persons corporations, or successors claiming by, through or under them. Tenampa and the Trust brought six claims: Count I (Quiet Title), Count II (Injunction), Count III (Trespass), Count IV (Slander of Title), Count V (Adverse Possession), and Count VI (Declaratory Judgment). In essence, the petition alleged that the easements for the four parking spaces in the Parking Lot held by the Gatrosts and the Bernards had been extinguished and that Tenampa and the Trust were entitled to sole unencumbered ownership and use of the entire Parking Lot. On August 17, 2017, the Gatrosts

---

[5] The circuit court found that "[n]o recorded instrument, document or deed, dated prior to December 2013, created an easement to run with the [Building]."

[6] The second deed of trust is not contained within the legal file. However, because Great American Bank and its trustee abandoned its claim to the disputed parking spaces, it is irrelevant to the analysis.

[7] David Kenner was Great American Bank's trustee in the deed of trust recorded on February 21, 2014 and was only included in the petition in that official capacity.

[8] MPOWB Trustee Services, LLC was named as Great American Bank's trustee in the deed of trust recorded on September 30, 2015.

6

individually filed separate Answers.  On October 17, 2017, Bernard filed his Answer.  On November 20, 2017, Ultra filed its Answer asserting a counterclaim alleging that the Garcias, while acting on behalf of Tenampa and the Trust, committed trespass.

On December 18, 2017, Great American Bank, David Kenner, and MPOWB Trustee Services, LLC disclaimed any interest they may have in the Parking Lot, and Tenampa and the Trust dismissed their claims against those defendants with prejudice.  On January 23, 2018, Ultra dismissed its counterclaim against Tenampa and the Trust.  The circuit court conducted a trial on March 1, 2019, and after hearing the evidence and considering substantial legal briefing by the parties, the circuit court entered its final judgment on July 31, 2019, entering judgment against Tenampa and the Trust on Counts III, IV, and V, and implicitly entering judgment against Tenampa and the Trust on Count II ordering "that in all other respects [Tenampa and the Trust] is denied relief sought in its Petition."  However, with respect to Counts I and VI, the circuit court entered judgment in favor of Ultra and the Gatrosts finding that while Tenampa owns the Parking Lot in fee simple, that ownership is subject to an easement in gross held by Ultra for the daytime use of up to two parking spaces located within the Parking Lot and an easement in gross held by the Gatrosts for the daytime use of up to two parking spaces located within the Parking Lot.  This appeal followed.

## Standard of Review

"On appeal of a bench-tried case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Sauvain v. Acceptance Indem. Ins. Co.*, 437

7

S.W.3d 296, 302 (Mo. App. W.D. 2014) (citing *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012)).  We defer to the trial court's findings of fact when the evidence is contested, and "a trial court is free to disbelieve any, all, or none of the evidence, and the appellate court's role is not to re-evaluate the evidence through its own perspective." *Id.* at 303.  Therefore, we review the evidence in the light most favorable to the judgment accepting the evidence favorable to the judgment is true and disregarding any contradictory evidence. *Id.*

However, "[t]he interpretation of a deed is a question of law that is reviewed *de novo*." *Kan. City Area Transp. Auth. v. Donovan*, 601 S.W.3d 262, 269 (Mo. App. W.D. 2020) (internal quotations omitted).  "In construing a deed, the court's major task is to find the grantor's intent within the four corners of the instrument." *Id.*  (quoting *Burk v. Ann W. Jones Co., Inc.*, 687 S.W.2d 582, 585 (Mo. App. W.D. 1985)).

## Discussion

Tenampa and the Trust raise two points on appeal.  First, Tenampa and the Trust assert the circuit court erred in entering judgment finding that Tenampa's fee simple ownership of the Parking Lot is subject to an easement in gross in favor of the Gatrosts and Ultra because the judgment erroneously declares the law in that the easement reservation granted to the Bernards and the Gatrosts constitutes an easement in gross, which is personal in nature and not assignable, such that the assignment by the Bernards to Ultra is void.  Second, Tenampa and the Trust argue the circuit court erred in entering judgment finding that the Gatrosts retained a one-half interest in the four parking spaces contained within the Parking Lot, because the judgment misapplies the law in that the

8

Gatrosts' interest was terminated or abandoned because the purpose of the easement ceased to exist when Michael Gatrost moved his law practice out of the Building. On cross-appeal, Ultra raises one point asserting the circuit court erred in ruling as a matter of law that the easement was in gross rather than an easement appurtenant to the Building Lot, because the evidence at trial demonstrates the easement was for the continuing benefit of the Building Lot, in that the easement's purpose was to provide parking for the Building and its tenants and makes the Building Lot more marketable and more useful to the Building Lot's successor than to Bernard and Gatrost after they moved their law practices out of the Building. Because we find it necessary to determine whether the easement was an easement in gross or an easement appurtenant before we address whether the easement was assignable or had been terminated, we address the point Ultra raises in its cross appeal before we address Tenampa's and the Trust's points.

### Ultra's Point One

On cross-appeal, Ultra raises one point asserting the circuit court erred in ruling as a matter of law that the easement was an easement in gross rather than an easement appurtenant to the Building Lot, because the evidence at trial demonstrates the easement was for the continuing benefit of the Building Lot, in that the easement's purpose was to provide parking for the Building and its tenants and makes the Building Lot more marketable and more useful to the Building Lot's successor than to Bernard and Gatrost after they moved their law practices out of the Building. Ultra argues that when it purchased the Building Lot, it purchased the easement for the use of the four parking

9

spaces in the Parking Lot, because the easement was appurtenant to the real estate they purchased.

"Easements are either 'appurtenant' or 'in gross.'" *Burg v. Dampier*, 346 S.W.3d 343, 353 (Mo. App. W.D. 2011). "An easement appurtenant creates a dominant tenement (the land which benefits from the easement) and a servient tenement (the land which is burdened by the easement)." *Id*. (citing *Gardner v. Maffitt*, 74 S.W.2d 604, 606-07 (Mo. 1934)). Conversely, an easement in gross lacks a dominant estate and "conveys a personal interest in or right to use the land of another independent of ownership or possession of land." *Id*. (citing *Henley v. Cont'l Cablevision of St. Louis Cnty., Inc.*, 692 S.W.2d 825, 827 (Mo. App. E.D. 1985)). "An easement will never be presumed to be a mere personal right, when it can fairly be construed to be appurtenant to some other estate." *Phelan v. Rosener*, 511 S.W.3d 431, 438 (Mo. App. E.D. 2017) (quoting *Engelhardt v. Gravens*, 281 S.W. 715, 718 (Mo. 1926)).

In the instant case, the easement reservation at the time of the transfer from the Bernards and Gatrosts to the Garcias provided:

> GRANTORS AND OR THEIR HEIRS OR ASSIGNS SHALL RETAIN THE RIGHT TO UTILIZE THE PARKING LOT UP TO FOUR (4) SPACES DURING THE DAY, AND THIS WILL BE A CONTINUING RIGHT AND EASEMENT.

The circuit court found that "there is no evidence from which one can fairly construe this easement as appurtenant to another estate." (L.F. 26, p. 15, ¶ 7). Relying on *Phelan*, 511 S.W.3d at 438, Ultra contends that because the deed contained the words "heirs," "assigns," and "continuing" resolves any doubt that the easement is appurtenant to the

10

Building Lot. We disagree. In *Phelan*, the deed provided that "there is a private roadway easement over the land described in Exhibit B, [(the legal description of the servient estate)], which provides ingress and egress to the property described in Exhibit A, [(the legal description of the dominant estate")] and bound "the present and future tract owners, their heirs, successors, assigns[,] and personal representatives[.]" *Id.* But *Phelan*, is readily distinguishable by the language of the transfer. The easement that was reserved in the case before us made no mention of the Building Lot or its legal description and did not bind "present and future tract owners."

Furthermore, in *Kohlleppel v. Owens*, 613 S.W.2d 168, 176 (Mo. App. W.D. 1981), we held that an easement appurtenant must be "necessary to the [dominant estate's] enjoyment, cannot exist separate and apart therefrom, and passes to the heirs or assigns of the owner of the land." (quoting 28 C.J.S. Easements § 4a.) The Kohlleppels and the Owenses made an oral agreement to make various improvements on their two individual parcels of land and that Owens could use a portion of that land for farming. *Id.* at 172. Six years after the improvements had been made the Kohlleppels sent a notice to Owens demanding the Owenses cease trespassing on their land, and the trial court found that the agreement constituted an easement appurtenant. *Id.* at 176. On appeal, we determined that because the agreement was not "necessary" for Owens to "enjoy" the use of his land, was not inherently connected with his land, and clearly could have existed separate and apart therefrom, the agreement constituted a license.[9] *Id.*

---

[9] In *Kohlleppel*, we defined a license as "an authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land." *Kohlleppel*, 613 S.W.2d at 176 (quoting 53 C.J.S. Licenses § 79).

11

Like in *Kohlleppel*, the circuit court in the instant case found that there was no credible evidence that without the use or access to the four parking spaces that Ultra's ownership, use, operation, or access to the Building Lot was in any way hampered, blocked, interfered with, diminished or denied. The Building Lot contained a parking lot with five parking spaces next to the Building. Bernards and Gatrosts purchased the Parking Lot after they already owned the Building Lot and the purchase was not part of the same transaction. Bernard testified that the Parking Lot was intended to be "a potential backup" in case the law practices needed additional parking spaces, but the Parking Lot was not an absolute necessity to their business. Bernard also testified that he and Gatrost acquired the Parking Lot as an investment because that area is "very intense with businesses along Westport Road." Further, the Parking Lot that is in dispute was not adjacent to the Building Lot but was in fact separated from it by other commercial buildings and a city street. The Building Lot was owned by the Robisons or TBD for over ten years without them using the parking spaces, prior to the Building Lot's sale to Ultra. In fact, Bernard testified that "we didn't offer [the easement] to [the Robisons]. We considered that an asset of ours, separate and apart from the [Building Lot]." (Tr. 114:16-17).

Because the evidence supported the trial court's finding that the reservation was not necessary for the use of the Building Lot, we must consider whether the reservation constituted a mere license or an easement in gross. Because, "[t]he essential attribute of a bare license is the right of the grantor to freely revoke it at any time," *Kan. City Area Transp. Auth. v. Ashley*, 485 S.W.2d 641, 644 (Mo. App. 1972), we must conclude that

12

the parties did not agree to establish a freely revocable license but instead established an easement, because the reservation contained no language that even suggested that it was freely terminable but instead contained the specific words "continuing" and "easement." *see Santa Fe Trail Neighborhood Redevelopment Corp. v. W.F. Coehn & Co.*, 154 S.W.3d 432, 440 (Mo. App. W.D. 2005).

To support its argument, Ultra also relies on the Third Restatement of Property, which provides:

[T]he benefit of a servitude is:

(a) appurtenant to an interest in property if it serves a purpose that would be more useful to a successor to a property interest held by the original beneficiary of the servitude at the time the servitude was created than it would be to the original beneficiary after transfer of that interest to a successor;
(b) in gross if created in a person who held no property that benefited from the servitude, or if it serves a purpose that would be more useful to the original beneficiary than it would be to a successor to an interest in property held by the original beneficiary at the time the servitude was created.
. . .
In cases of doubt, a benefit should be construed to be appurtenant rather than in gross.

RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.5(1)-(2) (AM. L. INST. 2000 as updated through June 2020). No Missouri court has applied this section of the Third Restatement; and even if we were to find it persuasive, it would provide Ultra no relief.[10]

Ultra asserts the benefit of the easement is more useful to Ultra, as successor to the Bernards and the Gatrosts, as owner of the Building Lot, rather than the Bernards and the

---

[10] This section has been cited in *Eastling v. BP Prods. N. Am., Inc.*, 578 F.3d 831 (8th Cir. 2009) (applying Minnesota law); *Lobato v. Taylor*, 71 P.3d 938 (Colo. 2002) (en banc); *Lynch v. Town of Pelham*, 104 A.3d 1047 (N.H. 2014); *Nature Conservancy of Wis., Inc. v. Altnau*, 756 N.W.2d 641 (Wis. Ct. App. 2008); *Hasvold v.Park Cnty. Sch. Dist. No. 6*, 45 P.3d 635 (Wyo. 2002).

Gatrosts individually. However, the evidence supports the circuit court's conclusion that the easement is of at least equal if not greater use to the Bernards and the Gatrosts than it is to Ultra. The intent of Bernard and Gatrost at the time of reserving the four parking spaces in the Parking Lot was based upon Bernard's and Gatrost's intention to use the parking spaces for their personal use. Bernard and Gatrost testified that they viewed the use of the parking spaces as a "personal and private investment." Bernard and Gatrost sold the Building Lot without any mention of the easement, and similarly, Robisons and TBD purchased and occupied the building for approximately ten years without using or even knowing of the easement's existence. Furthermore, Ultra completed the purchase of the Building Lot from TBD with knowledge of the easement's existence but without resolving whether the easement interest would be conveyed to Ultra through the purchase of the Building Lot.

Bernard also testified that he and Gatrost "considered [the easement] an asset of ours, separate and apart from the real estate," and that he continued to park in the Parking Lot until he left the Building Lot more than twelve years after conveying the Building Lot to the Robisons.

For the foregoing reasons, we conclude the reservation constitutes an easement in gross rather than an easement appurtenant. Ultra's Point One is denied.

**Tenampa's and the Trust's Point One**

In their first point on appeal, Tenampa and the Trust assert the circuit court erred in entering judgment finding that Tenampa is the fee simple owner of the Parking Lot but that ownership is subject to an easement in gross in favor of Ultra, because the judgment

14

erroneously declares the law in that the easement reservation granted by the Bernards and the Gatrosts constitutes an easement, which is personal in nature and not assignable, such that the attempted transfer of the easement by the Bernards to Ultra is void.

However, by its plain and ordinary language, it is clear that the Bernards and the Gatrosts intended their easement reservation to be transferrable at the time of the transfer. The deed expressly provides that "GRANTORS AND OR THEIR *HEIRS OR ASSIGNS* SHALL RETAIN THE RIGHT TO UTILIZE UP TO FOUR (4) SPACES DURING THE DAY[.]" (emphasis added). Tenampa, relying on *Ashley*, 485 S.W.2d 641, asserts the circuit court failed to consider parol evidence demonstrating that the Garcias lacked knowledge that the easement was transferable. *Ashley* held that:

> [A] determination as to the true nature and legal character of the rights granted to [a party] cannot rest solely on the matter of terminology used in the document of transfer. Rather, that determination must be made upon a consideration of the intention of the parties as gathered from all the provisions in the agreements between them and all the surrounding circumstances.

*Id*. at 644. Kansas City Transit, Incorporated ("Transit") sold real estate to the Ashleys, and part of the transaction included an agreement denominated "License Agreement." *Id*. at 644. The License Agreement provided that the Ashleys "grant[ed] a license to [Transit] and its successors, for the exclusive use, at a fixed charge of One Dollar ($1.00) per year," of three parking lots. *Id*. at 643. We reasoned that because "[t]he essential attribute of a bare license is the right of the grantor to freely revoke it any time," and "[t]he absence of revocability at the option of the [Ashleys was] sufficient in itself to demonstrate that the rights conveyed to Transit in this case were greater than that of a

15

bare license." *Id* at 644-45. In other words, the agreement legally could not be both a license and irrevocable at the same time, which meant the language contained within the instrument was ambiguous.

Therefore, *Ashley* is inapposite because in the instant case the language contained within the deed conveying the Parking Lot to the Garcias and reserving the use of four parking spaces is unambiguous, as it provides that "GRANTORS AND OR THEIR HEIRS AND *ASSIGNS* SHALL RETAIN THE RIGHT TO UTILIZE UP TO FOUR (4) SPACES DURING THE DAY[.]" (emphasis added). The word "assign" means "[t]o convey in full; to transfer (rights or property)," *Assign*, BLACK'S LAW DICTIONARY (11th ed. 2019), and "[t]he parol evidence rule bars the use of extrinsic evidence unless the instrument to be interpreted is ambiguous." *Emerald Pointe, L.L.C. v. Jonak*, 202 S.W.3d 652, 659 (Mo. App. S.D. 2006) (citing *Royal Banks of Mo. v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991)). Because the terminology contained within the deed is unambiguous, the circuit court did not err in failing to consider Rudolph Garcia's extrinsic testimony regarding whether he believed the easement was transferable. Tenampa and the Trust failed to establish that the transfer of the easement by the Bernards to Ultra is void.

Tenampa's and the Trust's Point One is denied.

**Tenampa's and the Trust's Point Two**

In their second point on appeal, Tenampa and the Trust argue the circuit court erred in entering judgment finding that the Gatrosts retained a one-half interest in the four parking spaces contained within the Parking Lot because the judgment misapplies the law

16

in that the Gatrosts' interest was either abandoned or terminated as an operation of law when the purpose of the easement ceased to exist when Michael Gatrost moved his law practice out of the Building.

Because the deed contained the phrase "will be a continuing right and easement," the deed conferred a perpetual easement, and even if the deed did not plainly establish a perpetual easement, we presume easements are perpetual "even though the creating instruments did not contain words of inheritance or such as 'forever', 'permanent', 'perpetual' or the like." *Three-O-Three Invs., Inc. v. Moffitt*, 622 S.W.2d 736, 740 (Mo. App. W.D. 1981). The trial court did not err in finding this easement to be perpetual based on its express terms. However, "an easement may be terminated or extinguished by abandonment." *Feeler v. Reorganized Sch. Dist. No. 4 of Lincoln Cnty.*, 290 S.W.2d 102, 104 (Mo. 1956). "An easement is considered abandoned when there is a history of nonuse coupled with an act or omission showing a clear intent to abandon." *Tetrault v. Yankowski*, 460 S.W.3d 43, 49 (Mo. App. E.D. 2015) (quoting *Creech v. Noyes*, 87 S.W.3d 880, 885 (Mo. App. E.D. 2002)).

Tenampa and the Trust assert that the Gatrosts have abandoned their easement reservation because they have not used the Parking Lot since 2003, and Gatrost moved his law practice to Lee's Summit with no intention of returning to the Building. However, mere nonuse will not in itself constitute abandonment because it is a property right, and it is not necessary that the owner make use of his or her property to keep that right. *Id.*; *see Dalton v. Johnson*, 320 S.W.2d 569, 574 (Mo. 1959) ("An easement created by grant is not extinguished by mere nonuser however extended the period of

17

nonuser may be."). To establish abandonment "there must be a relinquishment of possession with intent to terminate the easement," and "[a]cts claimed to constitute the abandonment must be of a character so decisive and conclusive as to indicate a clear intent to abandon the easement." *Id*.; *Yankowski*, 460 S.W.3d at 49. Therefore, the fact that the Gatrosts have not used the parking spaces since 2003 does not alone extinguish the easement by abandonment.

Tenampa and the Trust also assert that the Gatrosts' easement has terminated by operation of law. An easement granted for a particular purpose terminates as soon as such purpose ceases to exist. *Ball v. Gross*, 565 S.W.2d 685, 689 (Mo. App. 1978) (citing 28 C.J.S. Easements § 54(a)). The circuit court found that Bernard and Gatrost intended "that their ownership of the easement and use of the parking spaces was their separate investment property . . . ." Gatrost testified that he believed the reserved spaces could be leased to others for daytime use. As the Parking Lot remains, the purpose for the easement is intact. The Gatrosts may have a future need to park in that location, even if they have not actually done so for seventeen years, and the Gatrosts could potentially reap an economic benefit from selling or assigning their easement to others.

Tenampa's and the Trust's Point Two is denied.

## Conclusion

We reverse the circuit court's entry of declaratory judgment erroneously finding that Tenampa[11] had a fee simple interest in the Parking Lot, but rather than remanding the

---

[11] The Garcias transferred their interest in the Parking Lot to the Trust immediately after its purchase. Tenampa's interest in the Parking Lot derives from its lease of the Parking Lot from the Trust.

18

case to the trial court, pursuant to Rule 84.14, we "give such judgment as the court ought to give" and amend the judgment to reflect that the Rudolph A. Garcia and Margaret A. Garcia Family Trust owns the Parking Lot in fee simple subject to an easement in gross held by Ultra for the daytime use of up to two parking spaces located within the Parking Lot and an easement in gross held by the Gatrosts for the daytime use of up to two parking spaces located within the Parking Lot.[12]  In all other respects, the circuit court's judgment is affirmed.

_____

Gary D. Witt, Judge

All concur

---

[12] The original easement was held as tenants in common for the daytime use of all the four parking spaces. The trial court divided that interest in the easement granting an easement in two of the parking spaces to Ultra and two of the parking spaces to Gatrosts.  No party challenges the authority of the trial judge to make this division of the easement tenancy, and therefore, we do not address it further.

19