

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

WILLIAM C. SUEDKAMP and ) No. ED106911
PERSIMMON RIDGE VINEYARDS, LLC,)
                                  )
         Appellants,              )  Appeal from the Circuit Court of
                                  )  Jefferson County
vs.                               )  15JE-CC00890
                                  )
DARREL TAYLOR, MINT PROPERTIES, ) Honorable Troy A. Cardona
LLC, and ELIJAH MCARDLE,          )
                                  )
         Respondents,             )  Filed: July 16, 2019
                                  )
and                               )
                                  )
LISA TAYLOR,                      )
                                  )
         Respondent/Cross-Appellant, )
                                  )
and                               )
                                  )
JOHN DOE and JANE DOE,            )
                                  )
         Defendants.              )

## OPINION

### 1.    Introduction.

This dispute concerns the nature and scope of two roadway easements that were created

long before the parties here came into possession of the two adjacent parcels in question. In 1982,

Paul Ellis, the original owner of all the property before us, subdivided it, retained the first parcel

for himself, sold the second parcel, and created two roadway easements that passed from his parcel over the second parcel to two public roadways on the other side.

Appellant Suedkamp became owner of the first parcel in 2010 and he owned and operated the Persimmon Ridge Vineyards winery on that property. Respondent/cross-appellant Lisa Taylor acquired the second parcel over which the easements passed and her now-ex-husband Darrel Taylor occupied the property with her. After Appellants brought this suit for damages arising out of the alleged interference by the Taylors with their use of the easements, the following summary judgment motions were filed and heard and the trial court ruled as follows:

1. The trial court granted in part Appellants' motion for summary judgment finding that the easements were valid and enforceable appurtenant easements, the court enjoined the Taylors from any further interference with Appellants' use of the easements, but the court denied the remainder of the motion which had sought to establish the scope and permissible use of the easements and that Appellants were damaged by the Taylors' conduct with respect to the easements. As a result, those issues remained for trial.

2. The trial court granted Darrel Taylor's motion for summary judgment finding that because defendants did not have notice of the easements, Appellants were not entitled to any damages as a result of the alleged interference with and damage to the easements.

3. The trial court denied Lisa Taylor's motion for summary judgment.

Now, Appellants seek review of the trial court's partial summary judgment that Appellants were not entitled to damages based on the court's reasoning that Appellants' failure to demonstrate that defendants had notice of the easements precluded any award of damages.

Lisa Taylor cross-appeals, alleging that (1) the court erred by not staying the proceedings because she had filed for bankruptcy; (2) that the court, in granting Appellants' partial summary

2

judgment, improperly found the existence of two appurtenant easements; and (3) that the court erred in ruling against her, following a bench trial, on each of her counterclaims for common law trespass, abuse of process, and private nuisance.

We reverse the trial court's entry of partial summary judgment to the extent it found that the Taylors did not have notice of the easements and as a result Appellants were not entitled to obtain damages due to the Taylors' alleged obstruction of and interference with the easements. We affirm the remainder of the trial court's judgment.

2.      *Background regarding the property and easements in question.*

The two parcels involved here were created in 1982 by Paul Ellis when he subdivided his larger plot into the two parcels before us, retained one of the parcels, and sold the other. In connection with that subdivision and sale, Ellis created two roadway easements over the parcel he sold to allow passage from his property, over the adjoining parcel, to two public roadways on the other side. These easements were described in the general warranty deed employed in connection with the sale of the second parcel and they were properly recorded.

The parcel Ellis retained was transferred various times within the Ellis family with Mary Clark, Paul Ellis' daughter, being the last Ellis family member to own it. None of those transfers specifically mentions the easements. While she owned the property, Mary Clark and her husband used and maintained the two easements and at some time before she sold the property to Appellant Suedkamp, Mary Clark built and operated the Vineyards winery on the property. In September 2010, Appellant Suedkamp acquired the property from Clark "together with all rights and appurtenances."

The second parcel was also transferred several times by general warranty deed including the transfer to Lisa Taylor, but the easements were not identified or described on any of those

3

deeds either. The last two transfers involve parties before us as Lisa Taylor obtained title on March 25, 2016, from Mint Property, LLC,[1] which had just acquired the property on September 30, 2015.

3.    *The dispute.*

When Appellant Suedkamp acquired the property, he also acquired the Vineyards winery. The Vineyards included a tasting room open to the public, which occasionally presented live music for up to 80 customers at a time. Customers and staff sometimes used the easements for ingress and egress.

Then in September or October 2015, when Lisa Taylor took possession of the second parcel, she immediately began disputing with Suedkamp regarding the existence and scope of the easements. For his part, Suedkamp complained that the Taylors were interfering with his use of the easements with physical obstructions and the removal through the use of heavy machinery of culverts and gravel that had been laid down on the easements.

Appellants filed the instant suit in December 2015. Appellants sought injunctive relief, damages for common law trespass and statutory trespass pursuant to § 537.340,[2] and damages for the maintenance of the roadway. Lisa Taylor's counterclaim alleged common law trespass, abuse of process, private nuisance, quiet title, and adverse possession.

Prior to the entry of the court's summary judgment order, Lisa Taylor filed for bankruptcy, which resulted in a stay of the proceedings. Though the stay was partially lifted on January 16, 2018, the bankruptcy court's order stated that "[n]o judgment for money damages may be granted."

Then, Taylor voluntarily dismissed her quiet title and adverse possession claims and the matter went to trial in April 2018 on her claims for common law trespass, abuse of process, and

---

[1] Lisa Taylor at relevant times was a member of Mint Property, LLC.
[2] All statutory references are to RSMo 2016.

4

private nuisance. Following a bench trial, the court ruled against Taylor on all claims finding them either without merit or moot in light of the court's partial summary judgment. The present appeal follows.

## Standard of Review

Appellants' sole point and the first two points of Taylor's cross-appeal relate to the court's partial summary judgment and therefore our review of those points is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). This Court is limited to the record that was before the trial court in reaching its decision; our review does not extend to the entire record. *Earth City Crescent Assoc., L.P. v. LAGF Assoc.-Mo, L.L.C.*, 60 S.W.3d 44, 46 (Mo.App.E.D. 2001). The interpretation of a deed is a question of law that we review *de novo*. *Erwin v. City of Palmyra*, 119 S.W.3d 582, 584 (Mo.App.E.D. 2003). We review the record in the light most favorable to the party against whom judgment was entered. *Earth City Crescent Assoc., L.P.*, 60 S.W.3d at 46.

The remainder of Taylor's points on cross-appeal address the trial court's judgment following the bench trial and those points invoke our standard of review of court-tried cases. On appeal of a court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We defer to the trial court on factual matters, and "all issues of fact on which the court has not made a specific finding are considered as having been found in accordance with the result reached." *Hinshaw v. M-C-M Properties, LLC*, 450 S.W.3d 823, 826 (Mo.App.W.D. 2014).

## Discussion

*1.* *Appellants' sole point on appeal.*

In their sole point on appeal, Appellants assert the trial court erred in its partial summary judgment when it found that even though the easements were valid and enforceable, Appellants were not entitled to damages because the court found that Appellants' burden included showing that the Taylors had notice of the easements and the Taylors established as a matter of undisputed fact that they did not have notice of the easements. We hold that the trial court erred in this regard.

An easement is a non-possessory interest in the real estate of another that confers a right of one person to use the property for a general or specific purpose. *Burg v. Dampier*, 346 S.W.3d 343, 353 (Mo.App.W.D. 2011). Though the right conferred by an easement is not a possessory right, it is nonetheless a right that can be enforced at law or in equity. *Id.*

"Easements are either 'appurtenant' or 'in gross.'" *Id.* An appurtenant easement creates a dominant tenement, which is the land benefited by the easement, and a servient tenement, the land burdened, and the easement runs with both parcels. *Three-O-Three Investments, Inc. v. Moffitt*, 622 S.W.2d 736, 739 (Mo.App.W.D. 1981). "Two of the principal legal attributes of an easement appurtenant for right of way purposes are the existence of both a dominant and servient tenement and that one terminus of the right of way must lie on the land to which it is claimed to be appurtenant." *Phelan v. Rosener*, 511 S.W.3d 431, 438 (Mo.App.E.D. 2017) (internal quotation marks omitted). "Words of limitation such as 'heirs' or 'assigns' of the grantee are not required to create an easement appurtenant." *Three-O-Three Investments, Inc.*, 622 S.W.2d at 739.

An easement *in gross*, on the other hand, is created for the benefit of a specific person, does not create dominant and servient tenements, and does not run with the land. *Id.* So, the existence

6

of a dominant tenement resolves the issue of whether an easement is appurtenant or in gross, and therefore whether an easement runs with the land. *Id.*

Here, Appellants assert that Paul Ellis' 1982 deed created two appurtenant easements while Taylor claims the deed merely created a personal right for Paul Ellis to cross the property and therefore they are easements in gross. The trial court found that the easements were appurtenant and therefore ran with both properties.

We agree with the trial court that the 1982 deed created two appurtenant easements. The 1982 deed demonstrates a clear intent to create two roadway easements to give access from the dominant parcel through the servient parcel to the public roads on the other side. There is no language in the deed indicating an intention to create the easements to benefit Paul Ellis alone. We will not presume an easement created a personal right when it can fairly be construed to be appurtenant. *Three-O-Three Investments, Inc.*, 622 S.W.2d at 739. And the fact that the 1982 deed does not mention "heirs" or "assigns" does not change this result. *Id.*

Further, that the easements are not mentioned or described in the deeds under which Suedkamp and Taylor acquired ownership of their respective parcels does not entitle Taylor to any relief. The grantee of a servient tenement takes the land subject to all easements that have been properly recorded, whether the easements are mentioned in his or her deed or not. *Brown v. Redfern*, 541 S.W.2d 725, 730 (Mo.App. 1976). Accordingly, we find that Taylor obtained her property subject to these properly-recorded appurtenant easements.

As a result, the trial court's finding that the Taylors did not have notice of the easements is erroneous as a matter of fact and as a matter of law. A property owner has constructive notice of all properly recorded easements found in their property's chain of title. *Phelan*, 511 S.W.3d at 441 n.7. Property owners have a duty to review the chain of title and courts presume that a party

7

has done so. *See Knutson v. Christeson*, 684 S.W.2d 549, 552 (Mo.App.S.D. 1984) (noting that as a "general rule . . . a grantee is charged with constructive notice of the contents of prior recorded instruments in his vendor's chain of title"); *see also Casady v. Fehring*, 360 S.W.3d 904, 908 (Mo.App.S.D. 2012) ("It is established by ancient, but viable, authority that a purchaser is bound with constructive notice of all recorded instruments and the recitals therein lying within his chain of title" (quoting *Basore v. Johnson*, 689 S.W.2d 103, 109 (Mo.App.S.D. 1985))). Thus, since the easements were recorded in the 1982 deed, which is included in Taylor's chain of title, Taylor had notice of the easements.

In *Burg*, the court faced a similar circumstance where a properly created and recorded easement did not appear on the servient tenement owner's deed. 346 S.W.3d at 348. After the servient tenement owner acquired her property, the dominant tenement owners moved onto their property, built a home, and began utilizing the easement at issue, which required them to cut fencing found on the servient owner's land that was obstructing the easement. *Id.* Neighborly disagreements continued for years, as the servient owner refused to acknowledge the existence of the easement and denied having any notice of the existence of the easement. *Id.* at 348-50. The court held that the servient owner was deemed to have notice of the properly recorded easement irrespective of its absence from her deed and the court awarded damages to the dominant owners caused by the servient owner's interference with the easement. *Id.* at 358-59.

And although we have concluded that the Taylors had notice of the easements as a matter of law, the issue of notice under the facts of this case is actually irrelevant to Appellants' suit for injunction and damages based on a private nuisance theory. The interference with or obstruction of an easement is a nuisance that may permit the owner to recover damages. *Mondelli v. Saline Sewer Co.*, 628 S.W.2d 697, 699 (Mo.App.E.D. 1982). The measure of damages depends on

whether the interference is temporary or permanent. *Burg*, 346 S.W.3d at 358. Additionally, a party may be entitled to special damages that are proximately caused by the nuisance. *Id.*

Appellants' point relied on is granted.

2.  *Taylor's cross-appeal.*

We now turn to Taylor's cross-appeal.[3] Her first point asserts that the trial court violated the bankruptcy court's automatic stay when it entered partial summary judgment in Appellants' favor. We disagree.

In May 2017, Taylor filed her petition in federal bankruptcy court in the Eastern District of Missouri. And on October 25, 2017, Taylor filed with the trial court a "suggestion of bankruptcy." The court's partial summary judgment in favor of Suedkamp was entered the following month, on November 21, 2017. Then on January 16, 2018, the bankruptcy court partially lifted the stay, but ordered that money damages could not be awarded against Taylor at that time. On March 28, 2018, the trial court here entered its amended judgment holding as a matter of law that the Taylors could not be liable for damages resulting from their interference with the easements because they lacked notice of the easements. The court additionally noted that "Defendants (subject to bankruptcy claims) *may* be liable for cutting trees on [Suedkamp's] property." (emphasis in original). Thus, by the time the court amended its judgment there was no automatic stay on the proceedings, and the court explicitly found that for Appellants to continue to pursue damages against Taylor the proceedings would be "subject to" Taylor's bankruptcy case.

Accordingly, although actions taken in violation of an automatic stay are usually considered void, *Crowley v. Crowley*, 715 S.W.2d 934, 938 (Mo.App.S.D. 1986), in the present

---

[3] Taylor's second point is essentially a response to Appellants' first and only point. We do not address Taylor's argument again here.

case the trial court explicitly followed the bankruptcy court order, and amended its own entry of partial summary judgment after the stay was lifted. Even if we were to assume that it was error for the trial court to enter its original partial summary judgment order a month after Taylor filed her suggestion of bankruptcy with the trial court, no final judgment was entered and no damages were assessed against Taylor. And, contrary to Taylor's claim, her filing did not deprive the court of subject matter jurisdiction in this case.

On remand the trial court is free to sever the claims against Taylor from the rest of the case until the bankruptcy proceedings are concluded, *see Lockett v. Owens-Corning Fiberglas*, 808 S.W.2d 902 (Mo.App.E.D. 1991), or, if the bankruptcy court lifts the stay, proceed in accordance with that order. *See Kliefoth v. Fields*, 828 S.W.2d 714, 715 (Mo.App.E.D. 1992) (noting a bankruptcy court lifted a stay to permit a "decision and award" by an arbitration panel but precluded the execution on a judgment against the debtor in said arbitration).

Taylor's first point is denied.

For her third point, Taylor argues that the trial court improperly entered judgment against her on the claim of common law trespass. Trespass is the unauthorized entry by a person upon the land of another. *Muir v. Ruder*, 945 S.W.2d 33, 35 (Mo.App.E.D. 1997). Since the trial court had already ruled in its partial summary judgment that the easements were valid and enforceable, Appellants' use of the easements on Taylor's property is not trespass. Taylor's alternative theory at trial apparently was that Appellants exceeded the physical boundaries of the easements.

At trial, Taylor testified and presented videos of Appellants' use of the easements. The court found that because the videos showed no clear boundary lines, Taylor failed to carry her burden to prove that Suedkamp trespassed. In a court-tried case, we defer to the trial court on these purely factual determinations. *Wood v. Smith*, 359 S.W.3d 526, 529 (Mo.App.E.D. 2012).

10

Accordingly, Taylor's third point is denied.

In her fourth point, Taylor asserts the trial court erred by entering judgment against her on the claim of abuse of process. Abuse of process is (1) an illegal, improper, perverted use of process, (2) done for an improper purpose, (3) resulting in damage. *Impey v. Hart*, 471 S.W.3d 776, 780 (Mo.App.S.D. 2015). We agree with the trial court that Taylor failed to prove that Appellants engaged in an illegal, improper, or perverted use of process in this case or that they had an improper purpose. The record establishes that Appellants sought through the lawsuit giving rise to this appeal to establish the existence, nature, and scope of their easements and the extent to which their interests had been interfered with. *See Crow v. Crawford & Co.*, 259 S.W.3d 104, 117 (Mo.App.E.D. 2008) (holding that a claim for abuse of process cannot lie "where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive might be").

Taylor's fourth point is denied.

In her fifth point, Taylor asserts that the trial court erred in ruling against her on her claim of private nuisance. "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property." *Scott Family Props., LP v. Mo. Highways & Transp. Comm'n*, 546 S.W.3d 605, 608 (Mo.App.E.D. 2018).

The trial court found that Suedkamp's use of his property was not unreasonable. The court noted that Suedkamp's property is not in a residential area; the Vineyards had live music but at a relatively low volume; and the Vineyards were operational before Taylor acquired her property. We defer to and find no error with the trial court's decision as the fact-finder here that Taylor failed to establish that Suedkamp's use of his own property was unreasonable. *See Davis v. J.C. Nichols*

11

*Co.*, 714 S.W.2d 679, 684 (Mo.App.W.D. 1986) ("The question is reasonableness of use which is, in turn, an issue for the jury."). Taylor's fifth point is denied.

## Conclusion

We grant Appellants' sole point on appeal, reversing the trial court's entry of partial summary judgment to the extent it held that notice was a precondition for Appellants to obtain damages resulting from Taylor's obstruction of and interference with the easements, and remand for further proceedings consistent with this opinion. The remainder of the trial court's judgment is affirmed.[4]

_____
James M. Dowd, Judge

Sherri B. Sullivan, P.J., and
Robin Ransom, J., concur.

_____

[4] We also deny Taylor's motion to dismiss this appeal.