

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| ORIN WALLACE, | ) | No. ED110783 |
| | ) | |
| and | ) | |
| | ) | |
| DONNA WALLACE, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| Respondents, | ) | Cause No. 21AB-CC00018 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL P. BYRNE, | ) | Honorable Craig E. Hellmann |
| | ) | |
| Appellant. | ) | Filed: June 27, 2023 |

## Introduction

The trial court entered declaratory judgment in favor of Plaintiffs-Respondents Orin and

Donna Wallace declaring the existence and location of their easement over the property of

Defendant-Appellant Michael Byrne. Appellant challenges the existence and location of the

easement. We affirm the judgment and remand for the trial court to calculate attorney fees on

appeal in favor of Respondents and against Appellant.

## Background

*Factual Background*

Appellant and Respondents live on neighboring properties in Franklin County. A road,

known as Whippoorwill Lane since the 1990s, traverses Appellant's property. Respondents, since

purchasing their parcel in 1994, have used this road to get to their parcel. Appellant, since purchasing his parcel in 2008, has acquiesced in Respondents' use of the road. But, in 2017, Appellant wanted Respondents to stop using Whippoorwill Lane and instead use a new road he constructed between 2017 and 2020. Respondents informed Appellant they would not use his new road because they already had the right to use Whippoorwill Lane.

Common Links in Appellant's and Respondents' Chains of Title

Appellant's and Respondents' respective chains of title are linked by common ownership by Michael and Fannie McDermott. In 1931, the McDermotts owned approximately 40 acres of land. That year, they began subdividing and conveying parcels of their land.

On June 17, 1931, the McDermotts conveyed some of their property out of the McDermott family. The property conveyed in this transaction, "the northwest quarter of the northwest quarter [in Section 9]," would eventually become Appellant's property. With this conveyance, the McDermotts "reserve[d] unto themselves, their heirs, and assigns a private roadway running due north and south through the northwest quarter of the northwest quarter of the Section herein." The McDermotts retained the land that would eventually become Respondents' property.

On December 5, 1950, the McDermotts' son and his wife, Leo and Edna McDermott, acquired from Joseph and Lorraine Brewer "[t]he North West ¼ of the North West ¼ of Section 9" or what would eventually become Appellant's parcel. In the Brewers' conveyance to Leo and Edna McDermott, the deed excepted a "private roadway running North and South thru said section [9]."

On January 31, 1957, Fannie McDermott conveyed what would eventually become Respondents' parcel to Leo and Edna McDermott. Thus, Leo and Edna McDermott acquired both of what would eventually become Appellant's and Respondents' parcels. Shortly thereafter, Leo McDermott began subdividing the land again.

2

On August 21, 1965, Leo and Edna McDermott conveyed "Part of the Southwest qr. of the Southwest qr. of Section 4, Township 41 North, Range 2 East of the 5th P.M." to their son and his wife, Jerry and Nancy McDermott. That parcel was conveyed "[t]ogether with easement for roadway over a strip of ground of the uniform width of 30 feet along the West side of the parcel herein described and continuing to Missouri Highway No. 30."

Respondents' Remaining Chain of Title

On December 22, 1969, Leo and Edna McDermott conveyed what would eventually become Respondents' parcel, "Part of the Southwest qr. of the Southwest qr.," to William and Marie Kozeny. The deed conveying the parcel included the following language:

> Together with the right of ingress and egress over a private roadway running through the Southeast qr. of the Southwest qr. in Section 4, The East half of the Southwest qr. of the Southwest qr. in Section 4, *the Northwest qr. of the Northwest qr. in Section 9*, and also a strip of ground of the uniform width of 8 feet off the West side of the Southwest qr. of the Northwest qr. in Section 9, and also a strip of ground of the uniform width of 8 feet off the East side of the Southwest qr. of the North east qr. in Section 8, all in Township 41 North, Range 2 East of the 5th P.M. (emphasis added)

On July 1, 1971, the Kozenys conveyed their interests in the land with the same language describing the easement or "right of ingress and egress."

On December 12, 1986, the land was conveyed by deed incorporating by reference the easement described in Leo and Edna McDermott's conveyance to the Kozenys. The deed described the easement as "a non-exclusive right of ingress and egress over a private roadway running Southwardly to Missouri State Highway No. 30."

Ultimately, on November 23, 1994, the land was conveyed to Respondents. This conveyance made no mention of the easement described in the preceding conveyances.

Appellant's Remaining Chain of Title

3

On August 20, 1981, Edna McDermott, widow of Leo McDermott, conveyed what would become Appellant's parcel to James and Clare Highfill "[s]ubject to existing easements and roadways." The conveyance contained the following language:

> Together with a non-exclusive right of ingress and egress over a 16 foot roadway the centerline of which is the West line of the Southwest qr. of the Northwest qr. in Section Nine (9), Township Fourty-One (41) North, Range Two (2) East of the 5th P.M. lying North of Missouri State Highway No. 30, as said roadway is now located and in use."

From December 9, 1987 to October 29, 2004, the parcel was conveyed three more times with the same language. Then, on March 31, 2008, the parcel was conveyed to Appellant. Thereafter, the parcel was conveyed among Appellant and his family members and, ultimately, on February 12, 2020, re-conveyed to solely Appellant. Those conveyances were "[s]ubject to restrictions, easements, conditions and zoning regulations of record, if any."

## Natural and Artificial Monuments

As confirmed at trial by aerial photographs, the road now called Whippoorwill Lane has traversed Appellant's and his predecessors' land since 1937. The portion of Whippoorwill Lane on Appellant's land, and the rest of the 30-foot wide easement, is flanked by cedar trees and fences on both sides. The distance between the fences is approximately 30 feet. The fences are estimated to be at least 50 years old.

## Respondents' Use of Whippoorwill Lane

Between 1994 and 1997, Respondents visited their property weekly. Respondents began building a house on the property in 1997. They moved in after the house was completed in 1999. After moving in, Respondents used Whippoorwill Lane to go to and from their property daily. Whippoorwill Lane is the only road Respondents have ever used to access their property.

Respondents raise cattle and farm hay on their land. They haul farming equipment to and from their property. Respondents otherwise use the road for ingress and egress by visitors, as well

4

as UPS, FedEx, and the U.S. Postal Service. Appellant, even before he owned his land, was aware of Respondents' farming operation and use of Whippoorwill Lane.

## Appellant's New Road

Around 2017, Appellant contemplated building a new road that could otherwise access Respondents' property. Appellant asked Respondents to release their rights to use the previously established easement and Whippoorwill Lane and instead use the road he planned to construct further west. Respondents informed Appellant they were not interested in changing roads. Appellant left "not particularly happy."

Undeterred, Appellant completed the new road in 2020. Respondents chose to not use the road. They believed they had every right to continue to use Whippoorwill Lane and the rest of the easement, Appellant's new road included too sharp a turn to safely accommodate their farming equipment, and Appellant had not obtained permission to build the road on every piece of land it touched.

On December 21, 2017, Appellant sued Respondents to relocate their easement to the new road. The court dismissed Appellant's suit.[1]

## Appellant's Substantial Interference

After Respondents refused to relinquish their rights to the easement, the relationship between Appellant and Respondents deteriorated.

On several occasions, things like boulders, tree limbs, and logs obstructed the road. The boulders flattened six of Respondents' tires over the course of two weeks. Appellant built a speed bump and dug ditches and large potholes on Whippoorwill Lane. Respondents ran over them or

---

[1] At trial in the instant case, the trial court explained it dismissed Appellant's previous suit in part because, once the boundaries of an easement are defined through use or description, those boundaries cannot be relocated or altered without the consent of all parties.

tried to dodge them, aggravating Mr. Wallace's anxiety, Mrs. Wallace's Parkinson's Disease, and their other health conditions. The road was in such disrepair that the U.S. Postal Service informed Respondents it would discontinue their mail service.

A powerline from Appellant's home to his barn across the easement began drooping, making travel on the road unsafe. Appellant also parked his vehicles and trailer along the road, allowing only very narrow passage.

Respondents attempted to fix the road, but Appellant prevented them from doing so. When Respondents attempted to clean out the ditches, remove obstacles, and grade the road, Appellant ran his tractor into Respondents' tractor.[2]

Respondents hired Riverside Quarry to deliver gravel, but the quarry informed Respondents it could not deliver until trees along the road were trimmed. When Respondents hired a tree trimming company, Appellant warned employees of the company that he would have them arrested if they cut any of his trees. Eventually, employees of the quarry were able to get to Respondents' property. As Respondents' son saw them out, Appellant stepped into the road and called Respondents' son a trespasser.

A few weeks prior to trial, Mrs. Wallace was traveling on Whippoorwill Lane. She had to slam on her brakes to avoid hitting Appellant, who had walked in front of her vehicle and was staring at her.

At trial, Appellant's explanation was "it was his road and he would . . . do whatever he needed to do or wanted to do to it and that if [Respondents] didn't like that, [they] should have allowed him to move the road easement." He generally conceded Respondents had an easement

---

[2] Appellant explained at trial, "Again, my attorney at that time told me that there was not a – oh – a maintenance agreement and that all they had, the Wallaces, was ingress and egress. . . . And so I did not want them on my property doing any maintenance on my road. . . . I have to give them ingress and egress, but the road is on my property."

including Whippoorwill Lane. Appellant's position nonetheless was that the easement description in Leo and Edna McDermott's 1965 conveyance to Jerry and Nancy McDermott did not sufficiently describe the location where the easement traversed Appellant's property to Highway 30, and the 1994 conveyance to Respondents did not grant an easement. Appellant requested the trial court move the easement to the location of Appellant's new road due to increased traffic on Whippoorwill Lane since the easement's creation.

*Procedural Background*

Pleadings

On January 28, 2021, Respondents filed a petition for a declaratory judgment of an express 30-foot wide easement, damages for Appellant's substantial interference with the easement, and an injunction prohibiting Appellant's interference. On June 10, 2021, Respondents filed their first amended petition adding a request for a declaratory judgment of a prescriptive easement.

In his answer to Respondents' first amended petition, Appellant admitted, among other things: (1) the three deeds immediately preceding Respondents' deed "all reference and convey the right to utilize the easement identified therein, which easement includes use of the private roadway then, and now, existing over the Northwest Quarter of the Northwest Quarter in Section 9"; (2) Appellant's property is located in the Northwest Quarter of the Northwest Quarter of Section 9; (3) the easement was properly recorded prior to Appellant's acquisition of his property; (4) Appellant had notice of the easement; (5) Appellant's property is subject to and burdened by the easement; and (6) Respondents are entitled to use the easement described in the three deeds immediately preceding their deed. Appellant also filed a counter-claim for trespass on the bases that Respondents used Whippoorwill Lane only with his permission, he revoked his permission, and Respondents continued to use the road.

7

Judgment

The trial court held a bench trial on February 10, 2022. In its judgment of March 18, 2022, the trial court granted Respondents a declaratory judgment, nuisance and punitive damages, injunctive relief, and attorney fees. The trial court declared that Respondents' have an express easement pursuant to the previously recorded conveyances, and its location was established by both description and use. The court found that Respondents "have an express easement. Even if the Court concluded otherwise, the evidence clearly demonstrated [Respondents] have a prescriptive easement over the same location and of the same width." The trial court also found:

> [Appellant] knowingly and intentionally interfered with [Respondents'] use and maintenance of the Easement out of both spite and to coerce [Respondents] to abandon their rights to the Easement. . . . [Appellant's] conduct also caused [Respondents] to incur substantial pain and suffering, as well as unnecessary costs and frustration. [Appellant] was openly confrontational with [Respondents], even challenging Orin Wallace, an elderly man, to fight him.

The trial court rejected Appellant's trespass counter-claim and declined Appellant's invitation to relocate the easement "by judicial fiat."

Finally, the trial court granted an award of attorney fees in the amount of $7,500 in favor of Respondents and against Appellant based on "special circumstances," pursuant to Section 527.100.[3] The special circumstances included Appellant's intentional interference with Respondents' easement rights and other intentional misconduct.

**Discussion**

*Briefing Deficiencies*

Respondents catalogue various deficiencies in Appellant's brief and request outright dismissal of the appeal pursuant to Rule 84.04.[4] Rule 84.04 plainly sets forth the briefing

---

[3] All statutory references are to the Missouri Revised Statutes (Cum. Supp. 2021) unless otherwise indicated.
[4] All rule references are to the Missouri Supreme Court Rules (2021) unless otherwise indicated.

requirements in all appellate courts. *See Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). Compliance with Rule 84.04 is mandatory to ensure that appellate courts do not become advocates by speculating on facts and arguments that have not been made. *Wright-Jones v. Mo. Ethics Comm'n*, 544 S.W.3d 177, 178 n.2 (Mo. banc 2018). Although this Court prefers to excuse technical deficiencies in a brief if it can understand the issues and reach the merits of the case, it will not consider a brief so deficient that it fails to give notice to this Court and to the other parties of the issue presented on appeal. *Lexow*, 643 S.W.3d at 505. We address the most serious deficiencies in Appellant's brief before turning to the merits of Appellant's remaining arguments preserved for review. *See id*.

First, Rule 84.04(d) requires an appellant to "[i]dentify the trial court ruling or action that the appellant challenges." Rule 84.04(d)(1)(A); *Lexow*, 643 S.W.3d at 508. In his first and second points relied on, Appellant claims the court abused its discretion in "creating" an easement. The points misapprehend the trial court's ruling. The trial court did not create an easement; it declared the existence of Respondents' pre-existing express easement.

Second, and of most consequence, the argument section of Appellant's brief repeatedly violates Rule 84.04(e). "The argument shall substantially follow the order of 'Points Relied On.' The point relied on shall be restated at the beginning of the section of the argument discussing that point." Rule 84.04(e); *see Wilson v. Schmelzer*, 653 S.W.3d 913, 916 (Mo. App. E.D. 2022) (dismissing appeal after noting appellant's failure to begin his argument with point relied on). Appellant's brief contains three points relied on but only a single argument section, which does not separately restate, or otherwise segregate, the points relied on.

"For each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the

9

applicable standard of review." Rule 84.04(e). Appellant fails to state whether any error was preserved for appellate review or how it was preserved. An appellant's failure to ascertain the preservation status of his claims and present argument in conformance with the applicable standard of review drastically undercuts the efficacy of his arguments. *Carruthers v. Serenity Mem'l Funeral & Cremation Serv., LLC*, 576 S.W.3d 301, 305 (Mo. App. E.D. 2019).

Rule 84.04(e) also requires, "The argument shall be limited to those errors included in the 'Points Relied On.'" We will not afford even *ex gratia* review of an error raised in the argument section of an appellant's brief but not captured in an associated point relied on. *Tolu v. Reid*, 639 S.W.3d 504, 515 n.7 (Mo. App. E.D. 2021). Appellant argues the trial court "abused its discretion in awarding attorney fees to the Appellees/Plaintiffs because the easement is non-exclusive." He also argues the court "exceeded its jurisdiction because the Order alters the property rights of individuals not parties to this action and alters agreed upon and recorded easements without due process," and this case "lacked necessary parties to properly and fully adjudicate the issues raised." These claimed errors appear nowhere in Appellant's three points relied on, nor are they supported by any legal authority or analysis in the argument section of his brief. We therefore deem them abandoned. *See In Interest of J.P.B.*, 509 S.W.3d 84, 97 (Mo. banc 2017); *Tolu*, 639 S.W.3d at 535.

Appellant further argues "the [trial] Court abused its discretion in awarding damages because there was no evidence presented of damages of any kind to which a dollar amount could be assessed." While this argument is captured in Appellant's third point relied on, and the point lists a handful cases, those cases are inapt and Appellant does not otherwise develop this point in the argument section of his brief. See *J.P.B.*, 509 S.W.3d at 97; *Tolu*, 639 S.W.3d at 535. Thus, the point is unreviewable as to any claim of error related to damages. *See Marvin E. Nieberg*

10

*Real Est. Co. v. Taylor-Morley-Simon, Inc.*, 867 S.W.2d 618, 627 (Mo. App. E.D. 1993). Point III is denied.

As for Appellant's remaining claims, we have discretion to review noncompliant briefs *ex gratia* when we can ascertain an appellant's arguments. *See Xtra Lease, LLC v. Pigeon Freight Servs., Inc.*, 662 S.W.3d 309, 312 n.1 (Mo. App. E.D. 2023); *Carruthers*, 576 S.W.3d at 305. We decline to dismiss Appellant's appeal in its entirety because we can ascertain Appellant's remaining arguments. Given Appellant's history of intentional misconduct and interference with Respondents' easement, a thorough exposition, on the merits, of the parties' respective property rights, and the benefits and burdens of the easement, is in order. We review Appellant's Points I and II *ex gratia* and affirm the judgment of the trial court.

*Standard of Review*

This Court will affirm the circuit court's judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Singleton v. Singleton*, 659 S.W.3d 336, 341 (Mo. banc 2023) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).[5]

All evidence and reasonable inferences from the evidence are viewed in the light most favorable to the circuit court's judgment. *Singleton*, 659 S.W.3d at 341. Claims that the circuit court erroneously declared or applied the law are reviewed *de novo*. *Id.* Accordingly, deference is paid to the circuit court's factual determinations, but this Court reviews *de novo* both the circuit court's legal conclusions and its application of law to the facts. *Id.*

*Point I: Respondents' Express Appurtenant Easement*

---

[5] Appellant does not specify on which grounds the trial court erred. Though Appellant mentions, "The standard of review in this matter is the oft stated standard as put forth in <u>Murphy v. Carson</u> [*sic*] 536 S.W. 2d 30 (Mo Banc 1976)," and suggests, on at least one occasion, the trial court's decision was against the weight of the evidence, he alleges the trial court "abused its discretion" in all three points relied on.

In his first point relied on, Appellant challenges the trial court's judgment on three grounds.[6] First, Appellant argues the trial court erred in declaring Respondents have an easement traversing Appellant's property because it was not specified in their deed. Second, Appellant argues that, even if Respondents have an easement traversing Appellant's land, the trial court erred in declaring its location and dimensions because the location was not specified in any valid deed in Respondents' chain of title. Third, Appellant argues Respondents' easement was extinguished by merger further up the parties' chains of title. Appellant is wrong on all accounts.

An easement is a non-possessory interest in the real estate of another which confers a right of one person to use that real estate for a general or specific purpose. *Suedkamp v. Taylor*, 578 S.W.3d 408, 414 (Mo. App. E.D. 2019). It is a property right that can be enforced at law or in equity. *Id.*

Generally speaking, there are two types of easements, easements appurtenant and easements in gross. *Id.* An easement appurtenant creates a benefit to a dominant estate and burdens a servient estate. *Id.* Words such as "heirs, assigns, perpetual, and permanent" indicate a desire to create an easement appurtenant but are not necessary. *Phelan v. Rosener*, 511 S.W.3d 431, 438 (Mo. App. E.D. 2017). An easement in gross creates a benefit for a specific person, regardless whether he or she owns property that would otherwise be benefited by the easement. *Suedkamp*, 578 S.W.3d at 414. Thus, the existence of a dominant estate resolves any doubt as to whether an easement appurtenant or an easement in gross was intended, as an easement in gross has no dominant estate. *Phelan*, 511 S.W.3d at 438.

---

[6] Appellant's point thus is multifarious, also in violation of Rule 84.04. *See Cedar Cnty. Comm'n v. Governor Michael Parson*, 661 S.W.3d 766, 772 (Mo. banc 2023). Though we may choose not to address a multifarious point, we do so here *ex gratia*. *See id.*

An easement is also either "express," if it is included in the instrument conveying title, or "implied," if the instrument conveying title does not contain the claimed easement. *Ebert v. Ebert*, 627 S.W.3d 571, 590 (Mo. App. E.D. 2021) (quoting *Hillside Dev. Co., Inc. v. Fields*, 928 S.W.2d 886, 889 (Mo. App. W.D. 1996)).

Appellant repeatedly conceded in his answer, other pleadings, and discovery responses, and at trial, that Respondents have an easement, and that easement benefits their dominant estate and burdens his servient estate. These concessions are judicial admissions and are conclusive against Appellant for our purposes here. *See Moore Auto. Grp., Inc. v. Goffstein*, 301 S.W.3d 49, 54 (Mo. banc 2009); *Espinosa v. Baker*, 631 S.W.3d 631, 637 (Mo. App. W.D. 2021).

That Respondents have an appurtenant easement on Appellant's land also was conclusively proved at trial. For example, the original conveyance from Michael and Fannie McDermott, as well as the subsequent conveyances of 1957, 1965, and 1969, all reserved an easement to the dominant estate, which Respondents ultimately acquired. Those conveyances contain some variation of the words "together with all rights and appurtenances to the same belonging, unto the said Grantees and to the heirs, successors, and assigns of such Grantees forever." *See Phelan*, 511 S.W.3d at 438. Also, the uncontested testimony at trial was that the easement benefits Respondents' dominant estate and burdens Appellant's servient estate.

Respondents thus have an express appurtenant easement.

Despite Appellant's concessions and the evidence in the record, Appellant persists that Respondents' easement was not mentioned in the 1994 conveyance to Respondents. While true, that fact has little bearing here.

An appurtenant easement is said to "run with the land," that is, both the dominant and servient estates. *Suedkamp*, 578 S.W.3d at 414; *Phelan*, 511 S.W.3d at 438. For an easement to

13

"run" is to say it passes with the conveyance of the dominant estate even if not specifically mentioned in the instrument of conveyance, such as a deed. *Phelan*, 511 S.W.3d at 438; *Beldner v. Gen. Elec. Co.*, 451 S.W.2d 65, 75 (Mo. 1970). So, the grantee of a dominant estate, here Respondents, takes the land benefited by all easements that have been properly recorded.

For that matter, the grantee of a servient estate, here Appellant, also takes the land subject to all easements that have been properly recorded, whether or not the easements are mentioned in his deed or other instrument of conveyance. *Phelan*, 511 S.W.3d at 438, 441, 441 n.7;[7] *Suedkamp*, 578 S.W.3d at 414–15. This is because a property owner has constructive notice of all properly recorded easements found in his property's chain of title. *Suedkamp*, 578 S.W.3d at 415. Property owners have a duty to review the chain of title, and courts presume that a party has done so. *Id* at 415.

In the instant case, Appellant has never denied that he had at least constructive notice of the easement. As mentioned, the McDermotts' original conveyance and the subsequent conveyances to Respondents' predecessors in interest reserved the easement to the dominant estate. In Appellant's own chain of title, the various conveyances from 1950 to 2004 of what would become Appellant's parcel similarly memorialized the easement burdening the servient estate. Even the conveyances to Appellant himself, and among Appellant and his family, were "[s]ubject to restrictions, easements, conditions and zoning regulations of record, if any." Appellant took his land subject to the properly recorded easement.

Appellant next argues that, even if Respondents have an easement, and even if it must traverse his property, the 1965 conveyance from Leo and Edna McDermott to Jerry and Nancy

---

[7] A servient tenement is bound by the terms of an easement if the owners have notice of record, actual notice, or constructive notice. *Id.* Recorded easements constitute "notice of record." *Id.*; Mo. Rev. Stat. §§ 442.380, 442.390, 442.400.

14

McDermott did not specify the location of the easement. Admittedly, this conveyance described the easement in relatively general terms: "Together with easement for roadway over a strip of ground of the uniform width of 30 feet along the West side of the parcel herein described and continuing to Missouri Highway No. 30." But even if this description is not as specific as others, it does not abrogate Respondents' easement or its location.

The grant of an easement controls the location of the easement if specified therein. *O'Brien v. Richter*, 455 S.W.2d 473, 477 (Mo. 1970). Where the conveyance does not definitely fix the location of the easement, the grantee is entitled to a convenient, reasonable, and accessible way within the limits of the grant. *Id.*; *Edward Runge Land Co. v. Busch*, 594 S.W.2d 647, 650 (Mo. App. E.D. 1980). If an easement is created in general terms, without a definite location, the location may be inferred within the boundaries of the land over which the right is granted, by proof of the use of a particular course or way on the part of the grantee or owner of the dominant estate, and the acquiescence of the grantor or owner of the servient estate. *O'Brien*, 455 S.W.2d at 477; *Bladdick v. Ozark Ore Co.*, 381 S.W.2d 760, 765 (Mo. 1964); *Busch*, 594 S.W.2d at 650.

All evidence regarding the dominant estate owners' use of the road now known as Whippoorwill Lane supported the trial court's declaration of the location of Respondents' express, appurtenant easement. Aerial photographs from as early as 1937 proved the location of the road. The road also is enclosed by natural and artificial monuments, trees and fencing, approximately 30 feet apart. The fence is estimated to be at least 50 years old.

Finally, Appellant argues Respondents' easement was terminated by merger of the parcels under common ownership. Appellant asserts, "In 1973, Jerry and Mary McDermont [*sic*] deeded the property back to Leo and Edna McDermott by a deed recorded in Franklin County at Book

15

290, page 375. This merger of the parcels into one extinguished the easement." Appellant's argument notwithstanding, nothing in the properly constituted record on appeal reveals a deed recorded in Franklin County at Book 290, page 375.[8]

Even assuming the parcels came under common ownership at some point after the establishment of the easement, subsequent, properly recorded deeds continued to include language giving notice of the easement. *See Phelan*, 511 S.W.3d at 438, 441, 441 n.7; *see also Suedkamp*, 578 S.W.3d at 414–15; Mo. Rev. Stat. §§ 442.380, 442.390, 442.400.

We hold the trial court did not err in declaring that Respondents have a 30-foot easement along Whippoorwill Lane traversing Appellant's property, the precise location of which has been established by description and use. Point I is denied.

*Point II: Balancing of Burdens and Benefits*

In his second point relied on, Appellant argues the trial court erred by declaring the existence and location of the easement without considering the burden of increased traffic on Appellant's servient estate and the existence of the new road as an "equal alternative." Appellant urges the trial court should have "weigh[ed] the relative burden upon the servient estate and the benefit to the dominant estate." Appellant's only authority for this proposition is *Hamai v. Witthaus*, 965 S.W.2d 379 (Mo. App. E.D. 1988), and Section 228.455.[9]

---

[8] Appellant apparently refers to his Exhibit I, purporting to be a general warranty deed recorded in Franklin County Book 290, Page 375. Exhibit I is not properly part of the record on appeal. Respondents have moved to strike Appellant's Exhibits A through P and R because they were never presented to the trial court. Exhibits not offered at trial are not properly part of the record on appeal. *Cooper v. Murphy*, 276 S.W.3d 380, 383 (Mo. App. E.D. 2009); *see In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 814 (Mo. banc 2011). Respondents' motion to strike Exhibits A through P and R is granted.

[9] There is no Section 228.455. Appellant presumably means to cite Section 228.345, as cited in *Hamai*, 965 S.W.2d at 382. Section 228.345 provides that, in an action to establish a private road pursuant to Section 228.342, the new road "shall be situated to do as little damage or injury and cause as little inconvenience as practicable to the owner or owners of the real property over which the private road shall pass."

The balancing test in *Hamai* and the terms of Chapter 228 deal only with the establishment of private roads and widening of existing roads. *See Hamai*, 965 S.W.2d at 382-383; Mo. Rev. Stat. §§ 228.342, 228.345. Respondents did not seek to have a road established or widened. Rather, they requested, and the trial court granted, a declaration of Respondents' existing easement by express grant or, alternatively, by prescription. Appellant's proposed balancing test is inapplicable.

The applicable law is clear that there is no weighing of benefits and burdens to be had where, as here, an easement has been established by an express grant or by the acts of the parties. *See Bladdick*, 381 S.W.2d at 766; *see also Umphres v. J.R. Mayer Enters., Inc.*, 889 S.W.2d 86, 90 (Mo. App. E.D. 1994). The location of the easement generally cannot be changed by either party without the other's consent, except by statute or under an express or implied grant or reservation. *See Bladdick*, 381 S.W.2d at 766; *Umphres*, 889 S.W.2d at 90. The established location of the easement binds the servient estate owner, so that he has no right to hinder the dominant estate owner's exercise of his rights or to compel the dominant estate owner to accept another location. *See Bladdick*, 381 S.W.2d at 766.[10] That remains the case even if the other location is equally convenient. *See id.*

We hold the trial court did not err in rejecting Appellant's balancing test when declaring the existence and location of the easement. Point II is denied.

### Respondents' Motion for Attorney Fees on Appeal

The trial court assessed attorney fees in favor of Respondents pursuant to Section 527.100. *See also* Rule 87.09. In their motion for attorney fees on appeal, Respondents likewise invoke Section 527.100. The motion was taken with the case, and we grant the motion.

---

[10] *See also* 28A C.J.S. Easements § 208 ("Unless a contrary intention appears from the terms of the grant, when a right-of-way is granted over certain land without fixing its location, but there is a way already located at the time of the grant, this will be held to be the location of the way granted, and the grantee cannot be compelled to accept a substitute for the existing way.") (internal footnotes omitted).

17

Section 527.100 permits the recovery of costs "as may seem equitable and just" in declaratory judgment actions. *Incline Vill. Bd. of Trs. v. Edler*, 592 S.W.3d 334, 341 (Mo. banc 2019). "Costs" in this context do not necessarily include attorney fees, but a court has discretion to assess attorney fees as "costs" in "special circumstances." *Id.* Missouri courts narrowly construe what constitutes a special circumstance. *Id.* One such special circumstance is "intentional misconduct" by a party to a declaratory judgment action. *Id.*

As set forth *supra*, the record is replete with evidence supporting the trial court's finding of Appellant's intentional misconduct. *See Temple Stephens Co. v. Westenhaver*, 776 S.W.2d 438, 443 (Mo. App. W.D. 1989). Suffice it to say Appellant purposefully and persistently interfered with Respondents' rightful use of the easement and Whippoorwill Lane, sowing anxiety and severing any neighborly relations. He insisted "it was his road and he would . . . do whatever he needed to do or wanted to do to it and that if [Respondents] didn't like that, [they] should have allowed him to move the road easement." On this record, an award of attorney fees is both equitable and just. *See* Mo. Rev. Stat. § 527.100.

An award of attorney fees authorized by statute may include fees incurred on appeal to fully compensate the prevailing party. *See Rogers v. Superior Metal, Inc.*, 480 S.W.3d 480, 485 (Mo. App. S.D. 2016) (citing *DeWalt v. Davidson Surface Air*, 449 S.W.3d 401, 407 (Mo. App. E.D. 2014)). We have authority to determine the amount of attorney fees on appeal, but we exercise that authority with caution because the trial court is better equipped to hear evidence and argument and determine reasonable attorney fees. *Wilson v. City of Kan. City*, 598 S.W.3d 888, 898 (Mo. banc 2020). Respondents' motion for attorney fees on appeal is granted, and we remand for the trial court to calculate reasonable attorney fees on appeal.

## Conclusion

We affirm. We remand to the trial court for further proceedings consistent with this opinion, with instructions to calculate reasonable attorney fees on appeal to be assessed in favor of Respondents and against Appellant.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., concurs and
John P. Torbitzky, J., concurs in a separate opinion.



# In the Missouri Court of Appeals
## Eastern District

<u>**DIVISION THREE**</u>

| | | |
|---|---|---|
| ORIN WALLACE, | ) | No. ED110783 |
| | ) | |
| and | ) | |
| | ) | |
| DONNA WALLACE, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| Respondents, | ) | Cause No. 21AB-CC00018 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL P. BYRNE, | ) | Honorable Craig E. Hellmann |
| | ) | |
| Appellant. | ) | Filed: June 27, 2023 |

<u>**CONCURRING OPINION**</u>

I agree with the principal opinion's thoughtful analysis of the issues related to the circuit court's judgment. I write separately because I believe we should grant Respondent's motion to dismiss the appeal as a result of Appellant's gross failure to comply with the mandatory requirements of Rule 84.04. The principal opinion discusses many of the briefing deficiencies, including the failure to provide a statement of facts that sufficiently apprises this Court of the facts necessary to adequately address the appeal, the failure to provide an adequate argument, and the failure to even identify the particular action of the circuit court that Appellant deems erroneous. These are egregious and warrant dismissal on their own, but I believe there is another, even more problematic, violation of the rules that renders review impossible.

Rule 84.04(d) sets forth the requirements for the points relied on in an appellant's brief. In addition to requiring the appellant to identify the "trial court ruling or action that the appellant challenges," this Rule also requires that an appellant "[s]tate concisely the legal reasons for the appellant's claim of reversible error" and "[e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1).

Rule 84.04, and particularly subsection (d), serves several important functions. "[C]ompliance with Rule 84.04 ensures that the opposing party is adequately informed of the precise matters in contention and informs this Court of the issues for review." *Murphree v. Lakeshore Estates, LLC,* 636 S.W.3d 622, 624 (Mo. App. E.D. 2021). This, in turn, permits this Court to conduct a meaningful review of the issues presented and allows for proper and adequate responsive briefing. *Id.* Rule 84.04 also permits this Court to retain its proper and constitutional role as a neutral arbitrator. *Id.* "Deficient briefing runs the risk of forcing this Court to assume the role of advocate by requiring us to sift through the legal record, reconstruct the statement of facts, and craft a legal argument on the appellant's behalf." *Id.*

The deficiencies in Appellant's brief make it impossible for Respondent to adequately respond and nearly impossible for us to maintain our proper role. Each of Appellant's points relied on state that the circuit court "abused its discretion" in one way or another. But as the principal opinion makes clear, an appeal from a judgment in a court-tried case is not reviewed for abuse of discretion. Instead, a judgment from a court-tried case is reviewed under the standard announced in *Murphy v. Carron* and will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. 536 S.W.2d 30, 32 (Mo. banc 1976).

Appellant's deficient briefing leaves it up to us to decide which of these legal reasons, if any, Appellant believes warrant reversal. From the points relied on, it is impossible to tell whether Appellant challenges the sufficiency of the evidence presented or whether he challenges the circuit court's application of the law to that evidence. Appellant's argument section provides no assistance. As the principal opinion notes, there is only one argument section that is intended to address all three points relied on. Not only is this improper under the rules, but it makes Appellant's arguments nearly incomprehensible. Respondent appears to have had similar difficulty discerning the basis for Appellant's argument, pointing out that although Appellant argues, at one point, that the circuit court abused its discretion, at another point, Appellant argues that the judgment was against the weight of the evidence.

I acknowledge this Court's long-stated and well-understood preference to decide cases on the merits. *Bennett v. Taylor*, 615 S.W.3d 96, 98 (Mo. App. E.D. 2020). That is my preference as well. Doing so ensures that matters are handled in accordance with the law. But we should only do so when our review is not hampered by deficient briefs. *Unifund CCR Partners v. Myers*, 563 S.W.3d 740, 743 (Mo. App. E.D. 2018). Moreover, the Supreme Court has recently reminded us that the "preference to reach the merits of a case when presented with a deficient brief must be balanced with the implication of such consideration." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). When we decide an insufficiently briefed appeal, we not only implicitly condone improper briefing, we also face the "dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency." *Id.* (quoting *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)). If we undertake to fill the deficiency in the briefing, we are not only "being inherently unfair to the other party to the appeal," but we are also being "unfair to

3

parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals." *Id.*

I believe that Appellant's brief requires us to do exactly what the Supreme Court cautioned against in *Lexow*. The principal opinion does an excellent job cataloging the facts of the case and applying the law to those facts, but the extensive review done by this Court was only necessary because Appellant failed to properly brief the appeal. In my view, this appeal should have been dismissed and appellate resources devoted to those appeals that allow this Court to maintain its role as a neutral arbiter. Because a dismissal here has the same practical effect as affirming the circuit court's judgment and because I agree with the principal opinion's analysis, I concur in the result of the principal opinion.

_____
John P. Torbitzky, J.